# JOSEPH J. FINK v. COLD SPRING GRANITE COMPANY.

## 115 N. W. (2d) 22.

### April 27, 1962—No. 38,359.

*Russell & Willenbring,* for relator.

. *Robert G. Johnson,* for respondent.

NELSON, JUSTICE.

Certiorari upon the relation of an employer to review a decision of the Industrial Commission in proceedings by an employee to obtain benefits under the occupational disease provisions of the Workmen's Compensation Act. Employee's petition was filed January 20, 1958. After several hearings, a referee entered findings on February 1, 1960, in favor of the employer, who is self-insured. Upon appeal, the commission reversed the decision of the referee in a decision entered November 3, 1960.

The employee, Joseph J. Fink, was 48 years old when the matter was heard before the referee. He had begun work for the employer, Cold Spring Granite Company, as a hand polisher of granite in 1926 when 16 years of age, and he continued this work as an employee of relator until August 1950 except for a period of 5½ years when he was engaged in other employment. During the period of employment with relator he was more or less continuously exposed to silica dust, a hazard peculiar to the granite industry. At his own request he was transferred in August 1950 to a construction crew in relator's employ where he did common labor. His reasons for requesting the transfer were that he tired easily, was short of breath, and felt that he was unable to continue longer as a granite polisher. Even in his work on the construction crew, his exposure to dust continued, but to a lesser degree.

Employee's employment by relator was terminated in February 1952 when he obtained a better paying job as a patrolman in Cold Spring. He appeared to be unable to perform the heavier work required on the construction crew and was advised at that time that relator had no other employment for him which would pay as much as he could earn as a patrolman. He found that work taxing also and quit it in June 1953, trying several different jobs in Cold Spring after that time. The record indicates that by February 25, 1957, employee was totally disabled and unable to continue on any job which required exertion. Since

February 1952 he has not engaged in any employment exposing him to silica dust.

Beginning as early as 1932 employer caused X rays to be made of employee's lungs. The record indicates that the X rays taken during the years of his employment show a gradual change from what had first been termed a "fairly healthy chest," on May 24, 1932, to "stage 3 silicosis," on February 25, 1957.

Employer contends that employee has never been permanently totally disabled and that his claim is barred by certain statutes of limitation, and the referee denied benefits to the employee primarily on the latter ground.

A reading of the entire record shows certain facts to be undisputed. During his employment by relator, employee contracted the disease of silicosis, which ran its usual course beginning with the first, continuing through the second, and into the third stage, which the disease had reached at the time of the hearings. It is undisputed that silicosis has resulted in the extreme disability which employee claimed existed at the time of the hearings.

Dr. Moses Barron and Dr. Herman Koop, testifying on behalf of employee, stated that he is unable to perform such work as he is fitted to perform with any reasonable continuity or with any sustained effort. Employee's only training has been in work that requires physical labor. Employee, therefore, claims that he has been and is permanently totally disabled.

The record discloses that employee, from 1950 on, had stage two silicosis and suffered from the physical effects of the disease, which include shortness of breath, fatigue from exertion, coughing, and the like. He performed physical labor of various kinds after leaving relator's employment until the late fall of 1954, but the record is clear that after that time his condition deteriorated until he could only do light work intermittently. In 1956 employee and his wife borrowed money and acquired a small restaurant. Employee has been limited in the work he could perform there and in the hours he could work.

Employee now contends that his condition has gradually grown worse until he can do nothing more than assist in the restaurant busi-

ness, in a very limited way, and that the restaurant is operated primarily by his wife.

Employee contends that he is permanently totally disabled due to his silicotic condition; he further contends that his claim is not barred by statutes of limitation.

It seems clear that the main question here is whether the claim is barred by Minn. St. 176.66, subd. 3, which reads:

"Neither the employee nor his dependents are entitled to compensation for disability or death resulting from occupational disease, unless such disease is due to the nature of his employment as defined in section 176.011, subdivision 15, and was contracted therein within 12 months previous to the date of disablement; *except in the case of silicosis or asbestosis, in which cases disablement of the employee must occur within three years from the date of such employee's last exposure* with an employer in an employment to the nature of which the disease may have been a hazard, * * *." (Italics supplied.)

This provision must be read with § 176.66, subds. 1 and 2, and § 176.011, subds. 15 and 16.[1]

---

[1]Section 176.66, subds. 1 and 2, provide:

Subd. 1. "The disablement of an employee resulting from an occupational disease, except where specifically otherwise provided, is to be treated as the happening of an accident within the meaning of the workmen's compensation law and the procedure and practice provided applies to all proceedings under this section, except where specifically otherwise provided herein. When used in this section, 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed and 'disablement' means the act of becoming so disabled."

Subd. 2. "If an employee is disabled or dies and his disability or death is caused by a compensable occupational disease, he or his dependents are entitled to compensation for his death or for the duration of his disability according to the provisions of this chapter, except as otherwise provided in this chapter. If it be determined that such employee is able to earn wages at another occupation which is not unhealthful or injurious and such wages do not equal his full wages prior to the date of his disablement, the compensation payable is to be 66 2/3 per cent of the difference between the daily wage of the workman at the time of disablement and the daily wage he is able to earn in his partially disabled condition, as provided by section 176.101, subdivision 2."

■ In Kaljuste v. Hennepin County Sanatorium Comm. 240 Minn. 407, 414, 61 N. W. (2d) 757, 762, we said:

"Statutes relating to the same subject are presumed to be imbued with the same spirit and to have been passed with deliberation and full knowledge of all existing legislation on the subject and [to have been] regarded by the lawmakers as being parts of a connected whole."

In construing a legislative act, a section thereof is not to be considered apart from other sections of the act, but the act is to be read and construed as a whole. Underhill v. State, 208 Minn. 498, 294 N. W. 643. The fundamental aim should be to ascertain and give effect to the intention of the legislature. Therefore, a statute, the words of which are ambiguous or the meaning of which is doubtful, should, if practicable, be so expounded as to give the intended legislative effect to every part thereof.[2]

---

Section 176.011, subds. 15 and 16, provide in part:

Subd. 15. " 'Occupational disease' means a disease arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment and shall include undulant fever. Ordinary diseases of life to which the general public is equally exposed outside of employment are not compensable, except where such diseases follow as an incident of an occupational disease, or where the exposure peculiar to the occupation makes such disease an occupational disease hazard. A disease arises out of the employment only if there be a direct causal connection between the conditions under which the work is performed and if the occupational disease follows as a natural incident of the work as a result of the exposure occasioned by the nature of the employment. An employer is not liable for compensation for any occupational disease which cannot be traced to the employment as a direct and proximate cause and is not recognized as a hazard characteristic of and peculiar to the trade, occupation, process, or employment or which results from a hazard to which the workman would have been equally exposed outside of the employment."

Subd. 16. " 'Personal injury' means injury arising out of and in the course of employment and includes personal injury caused by occupational disease; * * *."

[2]See, Rice v. Minnesota & Northwestern R. Co. 66 U. S. (1 Black) 358, 17 L. ed. 147; Minn. St. 645.16.

■ It is the rule that specific provisions in a statute control general provisions; that provisions of a complete and specific act will prevail over general language of another, prior provision, and if there is conflict between different statutes as to the same matter, the later statute prevails. Beck v. Groe, 245 Minn. 28, 70 N. W. (2d) 886, 52 A. L. R. (2d) 875.

■ We made it clear in Anderson v. City of Minneapolis, 258 Minn. 221, 103 N. W. (2d) 397, that § 176.66, subd. 3, must be read with § 176.011, subd. 15, and § 176.66, subd. 1, and in doing so held that an occupational disease is contracted within the meaning of § 176.66, subd. 3, when it manifests itself so as to interfere with bodily functions to such an extent that the employee can no longer substantially perform the duties of his employment.[3]

Mr. Justice Knutson, after discussing the foregoing statute, said in that case (258 Minn. 226, 103 N. W. [2d] 401):

"* * * After all, the main criterion in determining whether an occupational disease is compensable ought to be the causal relationship between the disease and the employment. If the disease results from the employment, it should be compensable no matter when it had its inception."

■ In Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535, this court held that written notice under the statute is not necessary where the employer has actual notice. In Anderson v. City of Minneapolis, *supra*, we also held that where the employee had informed the employer of the existence of the occupational disease and was examined by him the employer had actual notice. The question whether the condition of the employee in the instant case was known to the employer is affirmatively answered in the record. Employer caused the first X rays of the employee to be made in 1932 and intermittently thereafter until he quit his employment in February 1952.

---

[3] In Duncan v. Carpenter & Phillips, 233 N. C. 422, 64 S. E. (2d) 410, the North Carolina Supreme Court held that under the North Carolina act "disablement" as applied to asbestosis and silicosis means the event of becoming actually incapacitated from performing normal labor in the last occupation in which remuneratively employed.

. That said employee contracted the disease of silicosis during his employment with relator cannot be disputed. The record establishes that a causal relationship exists between employee's disease and the employment.

. We held in Anderson v. City of Minneapolis, *supra*, that where medical experts disagree as to the causal relationship between the development of an occupational disease and the employment a question of fact arises, the determination of which will not be disturbed on appeal where there is competent evidence to sustain it.

In Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646, we held that the referee and the commission did not err in finding that the employer had statutory notice and knowledge of employee's death within 90 days thereof, even though the employer contended that there was no evidence in the record to support that finding. The employer contended that the statute involved, § 176.141, was not satisfied by the mere knowledge of the death of the employee but that employer must have received knowledge of the connection between the death and the work in which the employee was engaged. This court held that the statute does not require such knowledge and that all it requires is knowledge of the injury within a certain time, since under our decisions injury occurs in occupational diseases only when disability appears or becomes manifest. Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397.

■ In Kress v. Minneapolis-Moline Co. 258 Minn. 1, 102 N. W. (2d) 497, 498, this court held:

"Where an employee who suffers from silicosis suffers a series of illnesses and is finally incapacitated from silico-tuberculosis, determination of the cause of prior illnesses presents a fact question for determination by the Industrial Commission. Where the evidence reasonably sustains a finding that the last illness brought about the disablement within the meaning of M. S. A. 176.66, the decision will be affirmed."

In that case it was held that the substantive rights of an employee to compensation under the Workmen's Compensation Act become

fixed by the law in force at the time a compensable injury or accident occurs. Kress v. Minneapolis-Moline Co. *supra.*

■ The Industrial Commission in reversing the referee said that in addition to determining that the employee was permanently totally disabled it must also determine the interpretation and application of §§ 176.66, subds. 1 to 3, and 176.664. The commission concluded that the requirement of § 176.66, subd. 3, that silicosis must occur within 3 years from the date of an employee's last exposure with an employer in an employment to the nature of which the disease may have been a hazard has been met in the instant case since employee's "disablement" occurred while he was working for the same employer where the same hazards still existed. Section 176.66, subd. 1, clearly defines disability and disablement. There is disability if the employee cannot earn full wages at the work in which he was last employed. That test is definite and it includes partial as well as total disability.

The Industrial Commission, in determining that employee had suffered disablement as early as 1950, took cognizance of its own files and under the theory enunciated by this court in Bushnell v. City of Duluth, 209 Minn. 27, 295 N. W. 73, made reference to a letter it had received from employee dated December 5, 1951, wherein he requested the commission's advice. The letter said in part:

"* * * At the present time I feel tired weak, and as such a tire-some person. I am employed at the same place again. I was employed as a Hand polisher which was a very dusty Job. I returned to the same trade upon my return and polished for about 14 or 16 months but could not keep the stamina required for the job. I then asked for a transfer of job and am now working outside doing maintenance work. But my condition is such that I am tired out and weak most of the time. The wages they pay are at a poor rate."

Employer contends that the commission has given undue credence to this letter; that it is not competent evidence upon which the commission can base an opinion. Section 176.391, subd. 1, of the Workmen's Compensation Act provides:

"Before, during, or after any hearing, the commission, a commis-

sioner, or a referee may make an independent investigation of the facts alleged in the petition or answer."

■ In a workmen's compensation proceeding if the conclusion of the commission is supported by sufficient competent evidence it will not be disturbed because incompetent evidence may have been received. We recognized in Hartman v. Cold Spring Granite Co. 243 Minn. 264, 67 N. W. (2d) 656, that the commission or a commissioner or referee may make an independent investigation of the facts alleged in the petition.

■ Relator takes the position that under § 176.664 employee was required to file a petition within 3 years after leaving his employment. The Industrial Commission took an opposite view in interpreting and applying § 176.664 to the facts in the instant case and determined that the employee filed his claim within sufficient time.

The history of § 176.664 shows that from the beginning it has combined notice provisions with filing provisions. As L. 1943, c. 633, § 10, it provided in part:

"Any claim for occupational disease is barred unless within 90 days after disablement of an employee as defined in Section 4327, subdivision 1, notice thereof in accordance with Section 4280 shall have been given to the employer, and unless the claim is filed with the commission within one year after the date of the employee's last exposure or within one year after the date of the last payment of compensation by the employer, or default in payment of compensation for occupational disease, except that in case of silicosis or asbestosis the claim may be filed with the commission within three years after the date of employee's last exposure or within three years of the date of the last payment of compensation by the employer, or his default in payment. If disablement occurs within the last 90 days allowed by this section for filing claims with the commission, then the employee or his dependents shall be allowed a period of 90 days from the happening of such disablement to comply with the provisions of this section."

Section 176.664 was amended by L. 1951, c. 454, to provide in part:

"In all cases except silicosis or asbestosis unless the employer shall have actual notice of the injury any claim for occupational disease is barred unless within 90 days after disablement of an employee as defined in section 176.66, subdivision 1, notice thereof in accordance with section 176.16 [now § 176.141] shall have been given to the employer, and unless the claim is filed with the commission with[in] the period specified in section 176.18 [now § 176.151], except that in case of silicosis or asbestosis the claim may be filed with the commission within three years after the date of employee's last exposure or within three years of the date of the last payment of compensation by the employer, or his default in payment."[4]

Thus, the legislature extended to victims of occupational disease

---

[4]Section 176.141 provides: "Unless the employer has actual knowledge of the occurrence of the injury or unless the injured worker, or a dependent or some one in behalf of either, gives written notice thereof to the employer within 14 days after the occurrence of the injury, then no compensation shall be due until such notice is given or knowledge obtained. If the notice is given or the knowledge obtained within 30 days from the occurrence of the injury, no want, failure, or inaccuracy of a notice shall be a bar to obtaining compensation unless the employer shows that he was prejudiced by such want, defect, or inaccuracy, and then only to the extent of such prejudice. If the notice is given or the knowledge obtained within 90 days, and if the employee or other beneficiary shows that his failure to give prior notice was due to his mistake, inadvertence, ignorance of fact or law, or inability, or to the fraud, misrepresentation, or deceit of the employer or his agent, then compensation may be allowed, unless the employer shows that he was prejudiced by failure to receive such notice, in which case the amount of compensation shall be reduced by such sum as fairly represents the prejudice shown. Unless knowledge is obtained or written notice given within 90 days after the occurrence of the injury no compensation shall be allowed."

Section 176.151 provides in part: "The time within which the following acts shall be performed shall be limited to the following periods, respectively:

"(1) Actions or proceedings by an injured employee to determine or recover compensation, two years after the employer has made written report of the injury to the commission, but not to exceed six years from the date of the accident."

the same time limitations as it had provided for employees suffering injuries in industrial accidents, § 176.151 providing when an employee must initiate proceedings. The phrase "excepting silicosis or asbestosis" was left in § 176.664 as amended but placed in a different position than in prior statutes.

We think it clear from analysis of the foregoing provisions that the legislature as early as 1943 recognized the necessity of enlarging the right of employees contracting silicosis (and of their dependents) because of the insidiousness of the disease and its progressive nature. Considering the foregoing statutes as parts of a whole, it becomes obvious that the legislature in enlarging the rights of victims of other occupational diseases did not intend to exclude those disabled by silicosis or asbestosis from the benefits of the time limitations provided by § 176.151.

When § 176.664 was last amended, the word "may" was retained in the provision that in case of silicosis or asbestosis a claim "may be filed with the commission within three years after the date of employee's last exposure or within three years of the date of the last payment of compensation by the employer, or his default in payment."

The retention of the word "may" is significant because that word is defined in § 645.44 as "permissive." We think the commission ruled correctly that the 3-year provision as to silicosis or asbestosis is solely a part of the notice provisions of § 176.664 and does not represent a restricted or limited statute of limitations. It is evident that the legislature intended employees suffering disablement due to silicosis or asbestosis to have the same protection afforded those contracting other occupational diseases or suffering injury due to industrial accidents and that the time limitations contained in § 176.151 apply to all. See, Duncan v. Carpenter & Phillips, 233 N. C. 422, 64 S. E. (2d) 410.

■ We have said that the contracting of silicosis is not a matter of a moment, or an occasion, but something which develops over a long period of time during which the victim keeps on contracting gradually through exposure until the breakdown, the clinical symptoms, arrives; that the disease is insidious so there is a continual build-up to the breaking point when disablement manifests itself and the injury finally

occurs. The statute does not commence to run against the victim until he has "contracted" the disease and the process of contracting the disease does not cease until physical impairment manifests itself. Yaeger v. Delano Granite Works, 236 Minn. 128, 52 N. W. (2d) 116.

Conflicts in expert medical testimony must ordinarily be resolved by the trier of fact.[5] In doing so the trier of fact may determine the comparative weight to be given to each opinion and consider the qualifications of each expert and the source of his information. Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433.

Anderson v. City of Minneapolis, 258 Minn. 221, 103 N. W. (2d) 397, and Kalmes v. Kahler Corp. 258 Minn. 105, 103 N. W. (2d) 203, have taken into account what appears to be an obvious fact that a period of limitation cannot start to run in the field of occupational diseases until the disease under consideration has reached a stage where it is, or within the period of limitation will be, compensable. The legislature could not have intended that an employee's rights to compensation be barred before his silicosis had progressed to the point where he might bring proceedings to enforce such rights especially in view of the 1951 amendment of § 176.664 enlarging the time limitations previously applicable to occupational diseases. There is nothing to indicate that the legislature intended to deprive anyone suffering industrial injury, through accident, or occupational disease of any kind, of the protection of the limitations contained in § 176.151. The time limitations provided thereby could not, in the instant case, start to run against employee until total disability occurred, since partial disability due to silicosis is compensable only if following a compensable period of total disability. § 176.664.

We have said repeatedly that the Workmen's Compensation Act is a remedial statute and must be liberally construed to effectuate its purpose. While it is true that if the meaning of a statute is plain there is ordinarily no room for construction, it is equally true that the legislature should not be taken to intend absurd or contradictory conse-

---

[5] Root v. City of Duluth, 247 Minn. 243, 76 N. W. (2d) 698; 21 Dunnell, Dig. (3 ed.) § 10406; Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67.

quences. See, Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378; Taylor v. Taylor, 10 Minn. 81 at 93 (107 at 120).

In Gray v. City of St. Paul, 250 Minn. 220, 235, 84 N. W. (2d) 606, 616, we said:

"This court's scope of review of a decision of the Industrial Commission by means of certiorari is fully stated in 21 Dunnell, Dig. (3 ed.) § 10426, and cases therein cited. We have observed the rule that the findings of the Industrial Commission on fact questions will not be disturbed unless consideration of the evidence with permissible inferences which may be drawn therefrom compels or requires reasonable minds to adopt contrary conclusions."[6]

■ The employer in the instant case knew the reason employee requested a transfer from his job as granite polisher to work on construction projects—that he found the work too heavy and wished as far as possible to avoid further contact with granite dust. The commission could well have found from these facts, together with the X-ray examinations, that relator had actual notice of employee's silicosis. We think it clear from the record that the employee filed his petition within 3 years of his total disablement and within 6 years from the last day he worked for his employer.

■ This court has held that although an injured person may be able to perform some portions of his occupation, he may be held to be totally disabled if he is unable to perform the substantial and material parts of some gainful work or occupation with reasonable continuity. This court has also held that occasional work for short periods by one generally disabled by impairment of mind or body does not, as a matter of law, negative total permanent disability.

The testimony in employee's behalf and certain admissions by doctors testifying for relator, together with the testimony of a representative of the Minnesota State Employment Service, fairly establish that there are no jobs available in and around Cold Spring, employee's

---

[6]See, Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. (2d) 888; Rinne v. W. C. Griffis Co. 234 Minn. 146, 47 N. W. (2d) 872; Graf v. Montgomery Ward Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797; Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419.

home town, which he is capable of performing in his present condition. The record also fairly establishes that the restaurant which he and his wife purchased and operate represents only an attempt on their part to create some type of work which employee can perform, such as serving customers at the coffee bar and dispensing soft drinks, but which permits him to sit down and rest when necessary. We think the record clear that his wife is largely responsible for the operation of the restaurant. The suggestion by relator that employee might even now carry on as a part-time mail carrier, obviously a civil service job, does not deserve comment. Consideration must be given to what jobs are available for this employee in Cold Spring.

The commission is the factfinder in all cases coming before it regardless of whether the appeal is heard upon the record of a hearing before the referee or upon such a record and additional evidence. Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8. It decides the entire case de novo upon the evidence before it.

The Industrial Commission has determined that the employee herein became totally disabled February 25, 1957; that his claim then arose; and that when he filed his petition in January 1958, he was well within the statutory time limit. The commission's findings find ample support in the record. Respondent is allowed $300 attorney's fees in this court.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.