NORBERT E. NOTCH v. VICTORY
GRANITE COMPANY AND ANOTHER.

238 N. W. 2d 426.

January 9, 1976—No. 45503.

*R. G. Shepley,* for relators.

*Reichert, Wenner & Koch, Edward M. Reichert, Jr.,* and *John R. Koch,* for respondent.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Certiorari on the relation of Victory Granite Company, employer, and Employers Mutual Liability Insurance Company, its insurer, to review a decision of the Workmen's Compensation Commission awarding permanent total disability benefits to

Norbert E. Notch, employee, under the occupational disease provisions of the Workmen's Compensation Act. We affirm.

Employee, 68 at the date of the hearing, took up the trade of stone cutting at the age of 17, and after 5 years, which included an apprenticeship, was a "full-fledged cutter." Due to the economic circumstances of the depression years, he was forced temporarily out of the trade into farm work, but reentered the stone-cutting business in 1943 as a general foreman for the employer, then known as Sauk Rapids Granite Company.

As foreman, employee was responsible for supervising the entire cutting operation, which consisted of cutting large blocks of granite into smaller slabs for use in construction and as monuments. His duties required him to keep constant tabs on the cutters working under him, which totalled as many as 41, checking their work and instructing them in the cutting operation. In performing these tasks he was exposed to a great deal of silica dust, a product of the granite-cutting operation and the silicosis-causing agent. Although he was provided with a protective mask which he wore most of the time, instructing the cutters necessitated its removal at times.

When employee began work with Victory Granite in 1943, he was in good health. About 6 years after commencing employment, he developed a shortness of breath and appeared to be unusually tired and susceptible to colds.

During his period of employment with Victory, employee was treated by his family physician and he submitted to periodic x-ray examinations pursuant to the Workmen's Compensation Act, Minn. St. 1971, § 176.667.[1] He testified, without objection, that

---

[1] In 1973 the legislature repealed the bulk of the act's provisions which dealt specially with occupational disease, including Minn. St. 1971, § 176.66, subds. 2 to 9, and §§ 176.661 to 176.668. See, Minn. L. 1973, c. 643. Employee's compensable claim, however, arose March 31, 1973, prior to the effective date of the legislative changes, July 1, 1973. The rights of an employee become fixed by the law in effect as of the date he sustains a compensable injury or disability. Kress v. Minneapolis-Moline Co. 258 Minn. 1, 102 N. W. 2d 497 (1960).

his family physician advised him that he was developing silicosis, and that shortly before leaving Victory, his doctor advised him that he had silicosis.

The x-ray examinations all revealed a condition in the lungs known as "fibrosis," the abnormal growth of fibrous connective tissue which invades and destroys normal lung components and which can be symptomatic of silicosis.[2] Examinations at the St. Cloud Hospital on November 18, 1943, and October 1, 1953, both indicated early stage 1 silicosis (based on a scale of 1 to 4). The semi-annual reports of Dr. O. A. Sander, from February 1953 to August 8, 1957, although not containing a diagnosis of silicosis, confirm the fibrosis condition and recommend that employee avoid exposure to granite dust. Employee had access to these reports and was familiar with them.

The combination of the x-ray examination reports, the advice from doctors, and his declining pulmonary condition, apparently led him to notify Victory that he believed he had silicosis and to request a transfer to work which did not involve exposure to dust particles. He was told such an opportunity was unavailable, and he terminated his employment with Victory November 15, 1957. On November 18, 1957, he began work with the city of St. Cloud, but at a substantial reduction in his hourly rate of pay, from $2.37 to $1.30. He spent 5 years working as a general laborer and was then promoted to foreman for the St. Cloud Park Department. His employment with the city did not involve any exposure to silica dust.

In 1958, employee wrote a letter to the Industrial Commission of the state of Minnesota informing them that he believed he had contracted silicosis and that he intended to file a claim,[3] but no claim was actually filed until the present one in 1970.

Employee's physical condition continued to deteriorate during

---

[2] See, generally, Gray, Attorney's Textbook of Medicine (3 ed.) § 205.11 and §§ 205E.01 to 205E.100.

[3] We do not, however, deem the letter an important element in this case in the light of the discussion which follows.

the course of his employment with the city. However, he was able to perform his supervisory duties, missing very little time from work. In 1970, apparently in anticipation of filing the claim petition, he consulted a chest surgeon, Dr. Broker, who, on the basis of the patient's history and a chest x-ray, diagnosed his condition as stage 2 silicosis. In early April 1973, and again in July, employee was in the hospital suffering from asthma, bronchitis, and severe dyspnea, which Dr. Broker attributed to silicosis. On September 5, 1973, following several examinations, Dr. Broker concluded that the employee was suffering from stage 3 to 4 silicosis with emphysema, and as a result was totally and permanently disabled. Dr. Broker recommended employee terminate his employment with the city, which he did on September 6, 1973.

The relators' doctor, Dr. Thomas B. Arnold, who examined the employee on three occasions in connection with the compensation claim, twice in March 1971 and again in December 1973, testified by deposition that on the basis of his clinical and x-ray examination the employee had only grade 1 silicosis, that smoking was 90 percent of the cause of his condition, and that he could continue his work with the Park Department "during his healthy periods."

Employee would apparently have been subject to mandatory retirement on December 31, 1973, according to the testimony of a personnel assistant for the city of St. Cloud. However, according to employee's testimony, again without objection, he had been told by the park superintendant that he would be retained beyond age 68.

Employee's claim petition was filed December 14, 1970, alleging his total disability as a result of contracting silicosis, arising out of and in the course of his employment as a granite worker for Victory Granite Company. The matter was heard January 10, 1974, before Compensation Judge John W. Keeler, who denied employee's petition based on his findings that (1) employee's silicosis was not the cause nor a substantial contributing cause

of any disability he may have; (2) employee was not permanently and totally disabled; and (3) employee's claim was barred by certain of the Act's time limitations. On appeal to the Workmen's Compensation Commission, Judge Keeler's decision was reversed based on the commission's contrary findings that (1) employee became partially disabled, albeit noncompensable at that time, on November 15, 1957, as a result of contracting silicosis; (2) the disease had progressed to such a degree as to result in his becoming temporarily totally disabled from March 31, 1973 to April 5, 1973, and permanently totally disabled on September 6, 1973; and (3) employee had incurred a "disablement" and filed his claim petition within the time limitations prescribed by the Act. Both Judge Keeler and the commission found that employee had contracted silicosis arising out of and in the course of his employment with Victory Granite.

The issues raised by this appeal are:

(1)  In applying Minn. St. 1971, § 176.66, subd. 3, requiring an employee to suffer a "disablement" from silicosis within 3 years of his last on-the-job exposure to silica dust, does "disablement," in light of Minn. St. 1971, § 176.664, limiting compensability for silicosis to total disability, include partial disability?

(2)  Does the evidence support the commission's finding of "disablement" of employee on or about November 15, 1957, within 3 years of his last exposure?

(3)  Does the 6-year limitation for the filing of claims provided in Minn. St. 176.151, subd. 1, commence when an employee, having contracted silicosis, becomes partially but noncompensably disabled, or when his disability becomes total and compensable pursuant to Minn. St. 1971, § 176.664?

(4)  Does the evidence support the commission's finding of total disability?

(5)  Does Minn. St. 1971, § 176.662, require conclusive evidence of employee's claim where, immediately prior to his "disablement," he was exposed to the inhalation of silica dust over a period of 14 years in his employment with employer?

■ Application of the time limitations of the Workmen's Compensation Act to cases involving occupational disease has presented continuous difficulty [4] because, unlike accidental injury with its sudden onset of disability, occupational disease is insidious in nature, generally involving a long and gradual period of development and varying degrees of disability. Its nature is repugnant to definite time limitations.

This insidiousness is especially acute in silicosis, as this court has observed in previous cases:

"Silicosis is a progressive accumulation of silica-laden dust in the lungs which creates a condition that eventually renders the lungs incapable of supplying oxygen to the blood. A long period of dust infiltration and accumulation, and development of blockage of the lungs, usually takes place before there is manifest impairment of one's bodily functions." Graber v. Peter Lametti Construction Co. 293 Minn. 24, 27, 197 N. W. 2d 443, 445 (1972).

"* * * In each case, the employe is capable of full performance of his duties until clinical symptoms appear. It might be said that the contracting of silicosis is not a matter of moment or an occasion, but of a long period of time, and that the victim keeps on contracting during a long period of exposure until the breakdown, the clinical symptom, arrives. Silicosis is being continually contracted—a build-up to a break by accumulation." Yaeger v. Delano Granite Works, 236 Minn. 128, 134, 52 N. W. 2d 116, 119 (1952).

This court has developed rather well-defined rules in construing Minn. St. 1971, § 176.66, subd. 3, and 176.151, subd. 1. Applying these rules to this case leads us to upholding the commission.

---

[4] E. g., Anderson v. City of Minneapolis, 258 Minn. 221, 103 N. W. 2d 397 (1960) (application of Minn. St. 1957, § 176.66, subd. 3, to coronary sclerosis); Kalmes v. Kahler Corp. 258 Minn. 105, 103 N. W. 2d 203 (1960) (same to tuberculosis); Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 71 N. W. 2d 787 (1955) (application of Minn. St. 1945, § 176.66, subd. 3, to berylliosis).

Minn. St. 1971, § 176.66, subd. 3, provides in pertinent part:

"* * * in the case of silicosis * * * disablement of the employee must occur within three years from the date of such employee's last exposure with an employer in an employment to the nature of which the disease may have been a hazard * * *."

"Disablement" is defined in subd. 1 of the same section as the act of becoming "disabled from earning full wages at the work at which the employee was last employed * * *." In order for a disability to be compensable, however, total disability must result. Minn. St. 1971, § 176.664.

Relators argue that "disablement," for purposes of Minn. St. 1971, § 176.66, subd. 3, must be construed to mean compensable disability, i. e., total disability. According to their theory, employee's "disablement" occurred on March 31, 1973, the date he became temporarily totally disabled. Since this was more than 3 years from his last exposure, November 15, 1957, employee's claim is barred by Minn. St. 1971, § 176.66, subd. 3.

As respondent correctly points out, the "last exposure limitation" is an insurance provision intended to assure a causal relationship between the disease and the employment. It is not a limitation in the nature of those barring stale claims.

"* * * Quite likely the legislature was persuaded * * * that if silicosis does not manifest itself within 3 years of an employee's last exposure to silica dust, proof both medically and otherwise that an employment hazard caused the disease is so speculative and uncertain as to be unreliable." Graber v. Peter Lametti Construction Co. 293 Minn. 24, 30, 197 N. W. 2d 443, 447 (1972).

Recognizing that the purpose of the provision establishing the causal link is served by the manifestation of any disablement, not necessarily a compensable disability, this court has said:

"* * * There is disability if the employee cannot earn full wages at the work in which he was last employed. That test is

definite and it includes partial as well as total disability." Fink v. Cold Spring Granite Co. 262 Minn. 393, 401, 115 N. W. 2d 22, 28 (1962).

In accord with that statement in Fink, we upheld an award of compensation to an employee where, although suffering the physical effects (of silicosis)—shortness of breath, fatigue from exertion, coughing—within 3 years of his last exposure, he was nevertheless able to continue limited and less remunerative employment, and did not become totally disabled and entitled to compensation until the 3 year limitation had expired. This court rejected the employer's argument that "disablement" should mean total or compensable disability.

■ The commission found that employee's contraction of silicosis during his employment with Victory had caused him to terminate his employment as a granite worker and obtain employment at a lower wage with the city of St. Cloud. It concluded that this constituted a "disablement" of the employee as of November 15, 1957 (his termination date), which was well within 3 years of his last exposure to silica dust, also November 15, 1957, thereby satisfying the requirements of Minn. St. 1971, § 176.66, subd. 3.

The principle governing the scope of this court's review of commission findings is well established. It is that "* * * [a] finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly requires reasonable minds to adopt a conclusion contrary to the one at which the commission arrived." Saholt v. Northwest Airlines, Inc. 290 Minn. 393, 399, 188 N. W. 2d 772, 776 (1971).[5]

The uncontradicted testimony of employee and his wife establishes that he was in good health when he began work for Victory, but that during his period of employment he developed a pulmonary condition characterized by shortness of breath,

---

[5] See, generally, 21 Dunnell, Dig. (3 ed.) § 10426, subd. 14.

fatigue, and susceptibility to colds. X-ray examinations, with which he was fully familiar, revealed a developing fibrosis in his lung components, a symptom of silicosis, and led the St. Cloud Hospital radiologists to conclude that he had early stage 1 silicosis.

These circumstances, reasonably leading him to the conclusion that he had contracted silicosis, prompted him to request a transfer to work with Victory which did not involve exposure to silica dust, and eventually to terminate his employment when told no such opportunity was available. It is undisputed that his new employment resulted in a substantial loss in earnings. On the basis of this evidence, it cannot be said that the commission's findings are unreasonable.

Applying Minn. St. 1971, § 176.66, subd. 1, it is further clear that the commission was correct in concluding that employee had suffered a disablement, being unable to earn full wages, or any wages, as a granite worker, and in fact incurring a wage loss in his employment. See, Fink v. Cold Spring Granite Co. 262 Minn. 393, 115 N. W. 2d 22 (1962).

■ Minn. St. 176.151, subd. 1, insofar as pertinent to this lawsuit, provides:

"Actions or proceedings by an injured employee to determine or recover compensation [shall be brought within] six years from the date of the accident."

This is the act's general statute of limitations. Like other statutes of limitation, it is presumably intended to bar stale claims, thereby insuring the "repose of the defendant and the fair and effective administration of justice." Dalton v. Dow Chemical Co. 280 Minn. 147, 153 n.2, 158 N. W. 2d 580, 584 (1968); see, also, 3 Larson, Workmen's Compensation Law, § 78.20.

At first glance the limitation seems straightforward enough. An employee must file his claim within 6 years of the date of the accident. For purposes of occupational diseases, "accident" is defined in Minn. St. 176.66, subd. 1, as disablement, or, as previ-

ously explained, the act of becoming disabled from earning full wages at the employee's last employment. Applied to the facts of this case, then, the date of the "accident" would have been November 15, 1957, the date the commission found employee to have suffered a "disablement." Such is relators' argument.

However, Minn. St. 1971, § 176.664, limits compensability to total disability only. Thus, accepting the commission's finding that total disability occurred on March 31, 1973, employee's cause of action (his claim for compensation) does not arise until that date, well beyond 6 years from the "accident."

This anomalous situation prompted this court to state, in light of the insidious nature of silicosis and the limitation's purpose to bar stale claims, that—

"* * * a period of limitation cannot start to run in the field of occupational diseases until the disease under consideration has reached a stage where it is, or within the period of limitation will be, compensable. The legislature could not have intended that an employee's rights to compensation be barred before his silicosis had progressed to the point where he might bring proceedings to enforce such rights * * *. * * * [Minn. St. 176.151, subd. 1] could not, in the instant case, start to run against employee until total disability occurred, since partial disability due to silicosis is compensable only if following a compensable period of total disability." Fink v. Cold Spring Granite Co. 262 Minn. 405, 115 N. W. 2d 30.

In Fink, the employee's disablement occurred in 1950, total disability in 1957, and his claim was filed in 1958.[6]

---

[6] Relators argue, apparently, that notwithstanding the court's language, cited above, Fink nevertheless stands for the proposition that a claim must be filed within 6 years of the employee's last on-the-job exposure to silica dust. Its argument is based on the court's holding that "[w]e think it clear from the record that the employee filed his petition within 3 years of his total disablement and *within 6 years from the last day he worked* for his employer." (Italics supplied.) Admittedly, the statement is puzzling. The statutory language providing for the

■ Employee's doctor, on the basis of his examinations of the employee over a 3-year period, from March 1970 to September 1973, concluded that he was totally disabled and physically unable to continue in the employ of the St. Cloud Park Department as a result of grade 3 to 4 silicosis. Relators' doctor, who examined employee on three occasions regarding the compensation claim, was of the opinion that he had only grade 1 silicosis, which was not totally disabling and would not prevent him from continuing his work, and that smoking, not silicosis, was 90 percent of the cause of his pulmonary problems.

Where medical experts disagree, a fact question arises and it is the commission's province, as factfinder, to weigh the credibility of the experts and their testimony. As with other factual determinations, it will not be set aside unless manifestly contrary to the evidence, or unless, considering all the evidence and inferences reasonably to be drawn therefrom, a contrary conclusion is required. Grabowski v. Great Northern Oil Co. 283 Minn. 205, 167 N. W. 2d 14 (1969); Fuller v. Pacific Intermountain Express Co. 271 Minn. 470, 136 N. W. 2d 307 (1965); Anderson v. City of Minneapolis, 258 Minn. 221, 103 N. W. 2d 397 (1960). The commission's finding that the employee is totally disabled is sustained by the evidence.

■ Finally, relators argue that Minn. St. 1971, § 176.662 requires conclusive proof of the causal connection between employee's silicosis and the nature of his employment with Victory. That section provides:

"In the absence of conclusive evidence in favor of an employee's * * * claim of disability * * * from silicosis * * * it

commencement of the six year limitation does not refer to "last work day" or "last exposure," but rather to "accident," which is defined in Minn. St. 176.66, subd. 1, to mean "disablement." In Fink the commission found, and this court affirmed, that "disablement" occurred in 1950. In light of the facts in Fink and the expression of this court, the case must be read to hold that the 6-year limitation commences when the disability becomes compensable.

shall be presumed not to be due to the nature of any occupation or employment within Laws 1943, Chapter 633, unless during the ten years immediately preceding the date of *disablement* the employee shall have been exposed to the inhalation of silica dust * * * over a period of not less than five years, the last three years of which exposure shall have been in this state." (Italics supplied.)

It seems evident that it, like Minn. St. 1971, § 176.66, subd. 3, is designed to assure a causal link between the disease and the employment by putting the employee to a heavy burden of proof. The exception indicates that the legislature apparently believed that exposure to silica dust for a substantial period of time, 5 years out of the last 10, eliminated the speculation and uncertainty in establishing causation.

As in applying Minn. St. 1971, § 176.66, subd. 3, the application of this provision turns on the meaning of "disablement." Respondent's argument that it should have the same meaning given it in applying Minn. St. 1971, § 176.66, subd. 3, and that employee falls within the exception to Minn. St. 1971, § 176.662, is convincing.

Minn. St. 1971, § 176.66, subd. 3, and Minn. St. 1971, § 176.662, share the same purpose—assuring the establishment of a causal link between the disease and the employment. Logically, the arguments advanced, and adopted in Fink, favoring a construction of "disablement" which includes partial disability as well as total disability, and is not limited solely to compensable disability, operate with the same force in regard to Minn. St. 1971, § 176.662, leading to the conclusion that "disablement" should have the same meaning it is given in applying Minn. St. 1971, § 176.66, subd. 3.

Employee suffered a "disablement" on November 15, 1957, the date he terminated employment with Victory. His employment with them had spanned 14 years, during which time he was continuously exposed to granite or silica dust. His case falls

within the exception to Minn. St. 1971, § 176.662, and its requirements do not apply.

The decision of the Workmen's Compensation Commission is affirmed.