Norma PFEIL, Respondent,

v.

WORTHINGTON LADY ELKS LODGE NO. 2287 (Uninsured), Respondent,

and

State Treasurer, Custodian of the Special Compensation Fund, Relator.

No. 47465.

Supreme Court of Minnesota.

Nov. 25, 1977.

Warren Spannaus, Atty. Gen., Thomas G. Lockhart, Sp. Asst. Atty. Gen., St. Paul, for relator.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt, and Timothy J. McCoy, Minneapolis, for Pfeil and Lady Elks Lodge No. 2287.

PER CURIAM.

Certiorari on the relation of the state treasurer as custodian of the Special Compensation Fund to review a decision of the Worker's Compensation Court of Appeals awarding compensation to claimant, Norma Pfeil, against the Worthington Lady Elks Lodge No. 2287 (Lady Elks). Relator contends that an employment relationship did not exist between claimant and the Lady Elks and further contends that, even if it did, claimant's employment was exempt from the provisions of the Worker's Compensation Act. We reverse on the ground the Lady Elks was not an "employer" under the Worker's Compensation Act.

The Lady Elks was a group composed of wives of members of Elks Lodge No. 2287 (the Elks), which met weekly to play cards and also assisted the Elks by carrying on fund-raising activities, cooking for Elks' functions, and cleaning the lodge facilities. Although the Lady Elks was not officially sponsored by the Elks and was an informal group, members each contributed 50 cents at the card-playing sessions, and the group had a checking account in its name. The wife of the Exalted Ruler of the Elks usually was head of the Lady Elks, a position held by Mrs. Virginia Hartman in 1971.

At a card party in April 1971, the group agreed that Mrs. Hartman and another member, Mrs. Laura Lowe, should clean the lodge kitchen and receive pay for their work from the group's funds. The group also agreed unanimously that Mrs. Hartman should hire claimant to help with this project. Mrs. Hartman then contacted claimant, who agreed to help for pay of $2 an hour. She reported for work on a Saturday in April 1971, at a time set by Mrs. Hartman and began cleaning under her direction. A few hours later claimant fell from a ladder and injured her back and left wrist and hand. She worked until the project was completed, however, and was paid $18 by the Lady Elks for her work.

Subsequently, claimant filed a petition seeking compensation from the Elks for disability allegedly sustained as a result of the fall. In that proceeding, the compensation court determined that claimant had sustained a 15-percent permanent partial disability of the back and of the left wrist and hand as a result of the fall. Focusing on the fact the Elks' constitution expressly prohibits the order from having "adjuncts or auxiliaries," the compensation court viewed the Lady Elks as an independent voluntary group. The court further found that there was no employment relationship between claimant and the Elks, reasoning that the latter did not control the activities

of the Lady Elks and had not acquiesced in the hiring of claimant.

Claimant then filed a claim petition against the Lady Elks and, because the group had no compensation insurance, against the Special Compensation Fund. At the subsequent hearing, the state treasurer, on behalf of the fund, and claimant agreed to be bound by the medical findings made in the prior proceeding and agreed that the testimony and the deposition of the Elks' secretary introduced in the earlier proceeding would be evidence in this one also. On the basis of this evidence, further testimony by claimant, and the deposition of Mrs. Hartman, the compensation judge and the compensation court, on appeal, determined that claimant was employed by the Lady Elks and awarded compensation.

Minn.St. 176.011, subd. 9, defines "employee" as including "any person who performs services for another for hire." Claimant obviously performed services for hire, and the evidence is undisputed that Mrs. Hartman was authorized to act for the Lady Elks in hiring claimant. Accordingly, the compensation court found the services were performed for the Lady Elks. Relator urges, however, that the Lady Elks was not an "employer" within the meaning of § 176.011, subd. 10, which provides:

> "'Employer' means any person who employs another to perform a service for hire; and includes corporation, partnership, association, group of persons * *."

■ In view of the breadth of this definition, the compensation court determined that it includes the Lady Elks within its purview as a "group of persons." Relator's complaint that he would probably be unable to obtain reimbursement from the Lady Elks for compensation paid claimant if this interpretation of the statute is upheld has no bearing on whether the group is an employer under this provision, and the argument that the informality of the Lady Elks' organization somehow excludes it from the statutory definition is also without merit.

■ We have concluded, however, that the evidence does not permit application of the statutory definitions of "association" or "a group of persons" to the Lady Elks as an independent entity, but instead establishes that they are so closely identified with the Elks that the activities undertaken by the Lady Elks, including the hiring of claimant to clean the Elks' kitchen, must be viewed as having been done for and on behalf of the Elks. Despite the fact that both the Elks and the Lady Elks understood that the two organizations were formally distinct and separate, claimant did not so understand, and it is unlikely that the public in general did either. The close connection between the organizations cannot be denied: Membership in the Lady Elks was dependent upon being a spouse of an Elks member; the Elks allowed the Lady Elks to use the lodge facilities without any apparent restriction; one important function of the Lady Elks was the cleaning and maintenance of the lodge building; and, as the deposition of the Elks' secretary established, the Elks appreciated and approved of the Lady Elks' activities in maintaining the Elks' building. It is reasonable under these circumstances to conclude that the Elks in effect clothed the Lady Elks with the apparent authority to hire claimant to perform cleaning services for the Elks. Although the language of § 176.011, subd. 10, is broad, we do not believe it was meant to include an organization which existed largely to serve and advance the interests of another organization for whose benefit claimant was hired. Accordingly, since we hold that the Lady Elks is not an "employer" within the meaning of the Worker's Compensation Act, the decision awarding claimant compensation against them must be reversed.[1]

Reversed.

OTIS, J., took no part in the consideration or decision of this case.

---

1. Claimant is not foreclosed from applying to the Worker's Compensation Court of Appeals pursuant to Minn.St. 176.461, to set aside the decision entered in her proceeding against the

Elks and to grant a new hearing or reevaluate the evidence in that proceeding in the light of this opinion. See, *Radzak v. Mercy Hospital,* 291 Minn. 189, 190 N.W.2d 86 (1971). Should it be determined that an employment relationship existed between claimant and the Elks, it is apparent that her employment, although cas-ual, would not be exempt from the provisions of the Worker's Compensation Act by reason of § 176.041, subd. 1. See, *Farnam v. Linden Hills Congregational Church,* 276 Minn. 84, 149 N.W.2d 689 (1967); *Billmayer v. Sanford,* 177 Minn. 465, 225 N.W. 426 (1929).