Terrance ZAK, Respondent,

v.

GYPSY (Uninsured), Respondent,

and

State Treasurer, Custodian of the Special Compensation Fund, Relator.

No. 48835.

Supreme Court of Minnesota.

April 27, 1979.

Order Filed May 2, 1979.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Thomas G. Lockhart, Sp. Assṭ. Atty. Gen., St. Paul, for relator.

T. Brian R. Salita, Minneapolis, for respondent.

Heard before SHERAN, C. J., and PETERSON and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This court granted petition for writ of certiorari to state treasurer, custodian of the special compensation fund, relator, to review a decision of the Workers' Compensation Court of Appeals, filed March 23, 1978, affirming a decision of the compensation judge, filed October 28, 1977, in which he determined that Terrance Zak is to receive specified disability benefits from relator as a result of injuries Zak suffered in the course of employment with the now dissolved band named "Gypsy." We affirm.

In about July, 1973, Terrance Zak, employee, received a telephone call from Jim

Walsh, a member of "Gypsy," a rock and roll band, offering him a job as the group's road manager. It appears that Gypsy was an unincorporated group of five musicians: Ricco Rosenbaum, Jim Johnson, Jim Walsh, Randy Cates, and Bill Lorden. The group also employed two "roadies," persons who moved the equipment. The band had a permanent address in Minneapolis that it used for transacting business.

Employee accepted the position and was responsible for such · matters as handling public relations, making travel arrangements, reviewing contracts, and handling money. In paying for the expenses of the group, he wrote checks drawn from an account maintained in Gypsy's name. The band decided when checks were to be written, and Walsh cosigned them with employee. No one in particular was the leader of the band; rather, the musicians decided everything together. Although employee was not part of the band, he always went to the meetings and occasionally participated. Employee was paid about $100 per week, plus travel expenses, and was usually paid by checks drawn from the private checking accounts of the members, not from the Gypsy account.

On November 20, 1973,[1] employee was injured while returning from an engagement. The car that he was driving, which had been leased by the band, developed a flat tire. He stopped the car on the shoulder of the road. The car was rear ended, and employee was thrown against the steering wheel. Afterwards he was sore and his back and neck were stiff. Although he experienced pain and discomfort in his shoulder, neck, and lower back, employee continued to work for Gypsy until early in 1974 when the group started to disband.

After spending some time in Florida, employee returned to Minneapolis. He worked as a caretaker for the Meadowbrook Manor from November 1975 until March 1976, but quit because he could not perform physical labor.

His neck and shoulder continued to bother him, and on March 8, 1976, he went to see Dr. Guerrero, who advised him to enter the hospital for some tests. He has continued under Dr. Guerrero's care since that time.

Employee filed for workers' compensation benefits on March 2, 1977, claiming to have suffered a compensable injury while employed with Gypsy. The Workers' Compensation Division mailed the notice of the claim to Gypsy's Minneapolis address, but the mailing was returned, stamped "addressee unknown." On April 7, 1977, relator filed a motion to dismiss the claim on the grounds that the employer had not been adequately identified, the address of the alleged employer was unknown or nonexistent, and service of the claim petition, as prescribed by Minn.St. 176.305, subd. 2, and 176.285, was impossible. The motion was denied in an order filed May 9, 1977.

After a hearing on the merits, the compensation judge held that employee had sustained temporary total and permanent partial disabilities as the result of a personal injury arising out of and in the course of his employment with Gypsy and awarded him disability benefits to be paid by relator. The Workers' Compensation Court of Appeals affirmed the compensation judge's decision, holding there was full jurisdiction.

The issues presented on this appeal are:

1. Was Gypsy an employer within the meaning of Minn.St. 176.011, subd. 10?

2. Does the Workers' Compensation Division have personal jurisdiction to hear a claim for workers' compensation benefits against an alleged uninsured employer, payable by the special compensation fund pursuant to Minn.St. 176.183, where the no

---

1. There appears to be a discrepancy as to this date. In the findings and determinations accompanying the order denying motion to dismiss, filed May 9, 1977, in the memorandum accompanying the compensation judge's decision, filed October 28, 1977, and in the amended order allowing retraining compensation, filed October 12, 1978, the date of employee's accident is noted as November 7, 1973. Testimony at trial and statements made by employee in his July 1, 1977, deposition refer to November 20, 1973, as the approximate date of the injury. The discrepancy, however, does not affect the disposition of this case.

longer extant employer did not receive notice of the claim and did not participate in the proceedings?

■■■ 1. Relator argues that because of the ethereal nature of the group, the lack of an identifiable leader, and the manner by which employee was paid, Gypsy was not an employer within the meaning of the workers' compensation laws. It is insisted that employee was employed by the individual members, who also happened to engage in a commercial venture under the name "Gypsy."[2]

Minn.St. 176.011, subd. 10, defines "employer" as—

> " * * * any person who employs another to perform a service for hire; and includes corporation, partnership, association, group of persons * * *."

This section does not delineate the requirements for determining when people united behind a common goal or activity qualify as a "group of persons" or "association." However, a formal organization or a highly stratified structure is not in itself determinative of whether a group of persons may be viewed as an employer; the nature of the group must also be considered. Gypsy was comprised of only five musicians, who likely had comparable amounts of time, money, and energy invested in the band. It is reasonable, therefore, that each member would have an equal voice in determining the operations and functions of the band. Indeed, employee cited various instances where decisions were reached by mutual consent among the five members of the band. Although the band's structure may have been less stratified than that of other organizations, especially larger groups where a formalized structure is a greater necessity for operating efficiently, the shared management by the group does not prevent Gypsy from having been an employer.

Furthermore, this court has recognized that the language of § 176.011, subd. 10, is broad. In *Pfeil v. Worthington Lady Elks Lodge No. 2287*, 260 N.W.2d 576 (Minn. 1977), the informality of the activities of the Lady Elks, a group of wives of members of an Elks Lodge who met weekly to play cards and to assist the Elks in fund raising, cooking, and cleaning, was deemed sufficient to bring the group within that statutory definition. However, the Lady Elks were excluded from being an employer under § 176.011, subd. 10, because their group existence was so closely connected to and dependent upon the Elks that the evidence did not support their being an independent entity. 260 N.W.2d 578.

Those extenuating circumstances are not present in the instant case. Gypsy was not dependent upon another organization for its existence; it did not serve or benefit another body; and it was not primarily a social club. Gypsy was a self-sustaining entity. Its primary goals were to produce music and to make a profit. The fact that it may have lacked a formal structure and the fact that employee was paid from the members' personal checking accounts rather than Gypsy's account do not preclude Gypsy from being an employer within the meaning of § 176.011, subd. 10.

■ This result is also consistent with our approach to the Workers' Compensation Law, which is to construe its provisions liberally in favor of an injured worker or his dependents. *Fink v. Cold Spring Granite Co.*, 262 Minn. 393, 405, 115 N.W.2d 22, 30 (1962); *Kolbeck v. Myhra*, 255 Minn. 341, 344, 96 N.W.2d 633, 635 (1959). Thus, Gypsy was an employer within the meaning of § 176.011, subd. 10.

2. Relator further argues that even if the Workers' Compensation Division had

---

2. Relator stated the issue as whether employee qualified as an "employee." Minn.St. 176.011, subd. 9, defines "employee" as "any person who performs services for another for hire." There is little doubt that employee performed services for others for hire. He undertook the job at the group's request, he performed in accord with the group's decisions, he was kept so busy that he did not have time to work elsewhere, and he was paid by the members of the group.

The focus of relator's argument is that Gypsy does not qualify as an "employer" under § 176.011, subd. 10. Thus, the issue has been restated to be consistent with relator's argument.

subject matter jurisdiction, it did not have personal jurisdiction over the employer because Gypsy had not been given notice of the claim pursuant to Minn.St. 176.305, subd. 2, and 176.285. Consequently, it is asserted, the award was not valid. Employee, on the other hand, contends that because he complied with the statutory requirements for bringing the action, the compliance was a sufficient basis for the compensation judge's jurisdiction, and therefore liability devolves to the special compensation fund pursuant to Minn.St. 176.183.

There is no dispute that employee brought a timely action, that the appropriate papers were submitted to the commissioner of the department of labor and industry and to relator, and that there was subject matter jurisdiction. The issue is whether the compensation judge had personal jurisdiction to render a decision where the employer had not received notice of or had not participated in the proceeding.

■ The purpose of giving notice to a party is, of course, to comport with due process of law and to form part of the basis for a court's exercising personal jurisdiction over a party. If a party is not notified of the proceeding and given a reasonable opportunity to participate, a court does not have personal jurisdiction over the party and cannot render a decision that is binding as to that party. See, 12 Schneider, Workmen's Compensation Text § 2450.

Under § 176.305, subd. 2, within 10 days after a petition is filed, the commissioner of the department of labor and industry is required to serve upon the adverse party a copy of the petition and notice of hearing. Minn.St. 176.285 requires the commissioner to serve the papers and notices by mail or such other means as he directs.

In the instant case, Gypsy did not receive notice. The department mailed the notice and copy of the claim to Gypsy's last known address, but the mailings were returned, stamped "addressee unknown." Such a result could be expected. Employee testified the band was breaking up early in 1974; therefore, 3 years later, when the claim in this action was filed, any mailings to the

former address would inevitably be undeliverable. An effort was also made to ascertain the address from the telephone directory, but without success. Testimony further indicated that the individual members of the band have moved from the state. Thus, under the circumstances, by endeavoring to mail notice to Gypsy, the department effectively complied with the service requirement. Although Gypsy did not receive notice, where an employer is no longer extant, this court has dispensed with the requirement that the employer receive notice.

■ In *Lauer v. Tri-Mont Cooperative Creamery*, 287 Minn. 221, 178 N.W.2d 248 (1970), an employer underwent voluntary dissolution after an employee's work-related death and before his dependents commenced suit seeking compensation. The dependents were nevertheless able to recover against employer's insurer because the debt was not extinguished by the company's dissolution, but survived in the insurer. The court acknowledged that the employee's or his dependents' claim could not be determined until the employer and insurer received a hearing, of which they had received notice of an opportunity to be heard, but went on to recognize that "[i]f a corporate employer has ceased to exist, it cannot be afforded notice and opportunity to be heard." 287 Minn. 229, 178 N.W.2d 253. Although § 176.183 was not at issue and although an insurer was present, that case indicates that where a corporate employer ceases to exist after an employee suffers a compensable injury but before an action is commenced, notice need not be given to the employer. Such a determination is reasonable since if such an employer does not exist, it cannot receive notice, and personal jurisdiction over it cannot be obtained.

The decision of the court of appeals relied in part on Gypsy's nonexistence to affirm employee's award. The court of appeals held that there was full jurisdiction because the claim petition had been served by mail to Gypsy's last known address, the band had disbanded, it had been uninsured, and the special compensation fund had received

proper notice. Furthermore, relator was viewed as standing in the place of the employer and could seek reimbursement from it.

Additionally, since § 176.183, subd. 1,[3] is intended to permit an employee to recover from relator for compensable injuries not compensated for by his uninsured employer, this purpose should not be frustrated merely because an employer ceases to exist, thus preventing the giving of notice and the obtaining of personal jurisdiction.

■ An issue unaddressed in this suit is who may be ultimately liable to reimburse the relator. Under common law an unincorporated group or association must sue or be sued by or in the names of its individual members, absent an enabling statute allowing suits to be brought in the organization's name. *Bloom v. American Express Co.*, 222 Minn. 249, 252, 23 N.W.2d 570, 573 (1946). We do not decide whether the Workers' Compensation Law precludes individual liability, but note this issue so that parties in future litigation of this nature will name and include those individuals who are or may be liable.

■ For purposes of the present suit, however, we hold that the Workers' Compensation Division has full jurisdiction to hear a claim for workers' compensation benefits against an alleged uninsured employer, payable by the Special Compensation Fund pursuant to Minn.St. 176.183 where the former employer did not receive notice of the claim and did not participate in the proceedings because the employer, an unincorporated musical group, had disbanded and the addresses of the five members were either unknown or were not ascertained prior to the hearing.

3. That provision states: "When any employee shall sustain injury arising out of and in the course of his employment while in the employ of an employer other than the state or its political subdivisions, not insured or self-insured as provided for in this chapter, the employee or his dependents shall nevertheless receive benefits as provided for therein from the special compensation fund, and the state treasurer as custodian of such fund shall have a cause of action against such employer for reimbursement for all moneys paid out or to be paid out,

The Workers' Compensation Court of Appeals is affirmed.

### ORDER

Upon the application of counsel for the respondent,

IT IS ORDERED that the opinion, issued on April 27, 1979, be and hereby is amended to include an allowance of $400.00 attorney's fees to the plaintiff-respondent.

and, in the discretion of the court, as punitive damages an additional amount not exceeding 50 percent of all moneys paid out or to be paid out. An action to recover such moneys shall be instituted unless the custodian determines that no recovery is possible. All moneys recovered shall be deposited in the general fund. There shall be no payment from the special compensation fund if there is liability for the injury under the provisions of section 176.215, by an insurer or self-insurer."