## JOHN R. KRESS, SPECIAL ADMINISTRATOR OF ESTATE OF LEO A. KRESS, v. MINNEAPOLIS-MOLINE COMPANY.

102 N. W. (2d) 497.

April 14, 1960—No. 37,806.

*Faegre & Benson, Paul J. McGough,* and *G. Alan Cunningham,* for relator.

*Arnold M. Bellis* and *Robins, Davis & Lyons,* for respondent.

KNUTSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation.

Employee was employed by Minneapolis-Moline Company from 1935 to 1954 as a chipper and grinder. His work consisted of chipping and grinding rough castings, which involved working in an atmosphere in which there was considerable silica dust.

During the period from August 2, 1948, to September 29, 1948, employee was unable to work because of an illness which was diagnosed by his family physician as a bronchial trouble. He had an X-ray taken by a mobile unit, which subsequently was interpreted by Mineral Springs Sanatorium at Cannon Falls, Minnesota, on August 14, 1948, as showing a pathological process suggesting silicosis or silico-tuberculosis. A report of his family physician, dated September 10, 1948, related that employee had been ill and was unable to work—

"* * * due to a chest infection probably caused by silicosis or a possibility of silico-tuberculosis infection."

He was again unable to work from July 5, 1949, to August 16, 1949. During this period he spent 3 days at the Mineral Springs Sanatorium for observation, and X-rays were taken while there. During this time, three gastric lavage cultures were taken, two of which were reported as being positive, indicating that he was suffering from active silico-tuberculosis. He went back to work and, with the exception of a few intervals when he was laid up with illnesses not involved herein, continued to work until October 11, 1954. At that time it was first thought that he was suffering from pneumonia, but it was later determined that he was ill from silico-tuberculosis. It is now admitted that on that date he was totally disabled from such disease.

From 1943 or 1944 employee had X-rays of his chest taken at least annually, pursuant to M. S. A. 176.667. In 1944 or 1945 the plant doctor, O. J. Campbell, told employee that he had silicosis, but it was

not until February 1955 that any doctor told him that he had tuberculosis.

At the time of employee's illness in 1948, the employer filed a first report of injury with the Industrial Commission. Employer's doctor referred the employee to Dr. N. C. Plimpton, who, on September 13, 1948, recommended that:

"Liability be denied pending further investigation whether disability since August 2, 1948 is due to silicosis."

Dr. Plimpton then referred employee to Dr. J. C. Davis, a specialist in internal medicine. In the meantime, employer asked and received from the Industrial Commission a 30-day extension within which to admit or deny liability. On October 12, 1948, Dr. Davis sent Dr. Plimpton a report of his examination in which he concluded as follows:

"From my examination, it would seem the symptoms he [Kress] had during August and early September must have been due to a bronchitis or pneumonia which has completely cleared. In my opinion, this could not be attributed to his work."

Upon receipt of this report, employer's medical director, Dr. O. J. Campbell, recommended that employee's claim be denied, which it was.

It is admitted by everyone in this proceeding that on October 11, 1954, employee was permanently disabled from a compensable occupational disease, namely, silico-tuberculosis. It is employer's claim that this disability occurred when employee became ill on August 2, 1948, and that his rights to compensation are governed by the law in force at that time. It is respondent's claim that his disability arose on October 11, 1954, and that the law in force on that date determines his rights to compensation.

■ There is no dispute but that the substantive rights of an employee to compensation become fixed by the law in force at the time the compensable injury or accident occurs.[1]

---

[1] Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535; Roos v. City of Mankato, 199 Minn. 284, 271 N. W. 582; Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761.

■   Section 176.66, subd. 1, provides:

"The disablement of an employee resulting from an occupational disease, except where specifically otherwise provided, is to be treated as the happening of an accident within the meaning of the workmen's compensation law and the procedure and practice provided applies to all proceedings under this section, except where specifically otherwise provided herein. When used in this section, 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed and 'disablement' means the act of becoming so disabled."

Section 176.662 provides in part:

"In cases of silicosis or asbestosis complicated with tuberculosis of the lungs causing total disability or death compensation is payable as and for uncomplicated silicosis or asbestosis when the silicosis or asbestosis is an essential factor in causing such complications of tuberculosis of the lungs."

In Yaeger v. Delano Granite Works, 236 Minn. 128, 133, 52 N. W. (2d) 116, 119, we said:

"There is great similarity in the development of silicosis and coronary sclerosis. In both cases many years may elapse, and usually do elapse, between the inception of the condition and the resultant disability. Both are caused by the infiltration and gathering of substances. In coronary sclerosis the substance is cholesterol, which slowly and progressively thickens the middle and inner coat of the arteries that supply the blood for the heart muscle, thus gradually decreasing the size of the bore of those vessels until the muscle fails because of insufficient blood supply. In silicosis the substance is dust-laden silica, which eventually by the continued infiltration of silica with progressive accumulation creates a condition in the lungs which makes them unable to supply sufficient oxygen for the blood. Coronary sclerosis and silicosis are thus similar, in that each requires a long period of infiltration, accumulation, and development before there is an impairment of bodily functions.

*    *    *    *    *

"* * * It might be said that the contracting of silicosis is not a matter of a moment or an occasion, but of a long period of time, and that the victim keeps on contracting during a long period of exposure until the breakdown, the clinical symptom, arrives. Silicosis is being continually contracted—a build-up to a break by accumulation. The statute does not commence to run until the victim has 'contracted' the disease, and the process of contracting does not cease until physical impairment manifests itself."

In Kellerman v. City of St. Paul, 211 Minn. 351, 354, 1 N. W. (2d) 378, 380, we said:

"* * * In view of the nature of coronary sclerosis, the doubt as to the stage at which it should be characterized as a disease, and especially the negative results flowing from any other construction, we conclude, as did the commission, that coronary sclerosis is 'contracted' within the meaning of the statute when it first manifests itself so as to interfere with bodily functions."

In Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 266, 71 N. W. (2d) 787, 793, we said:

"Clearly, pulmonary berylliosis comes within the class of occupational diseases and we are unable to see any distinction between silicosis, coronary sclerosis, and berylliosis when applying the statutory limitation. Therefore, the statute in the case at bar does not commence to run until the victim has 'contracted' the disease, and the process of contracting the disease does not cease until physical impairment manifests itself."

While the statements quoted in the above cases deal with the time when the statute of limitations starts to run, the determination of which differs from determining when disability results so as to fix the rights of the parties, what we said regarding the manifestation of the disease is applicable here. Silicosis, whether standing alone or superimposed upon tuberculosis, is an insidious disease which frequently fails to manifest itself to the point where physical impairment appears until much time has elapsed. While there is much to support a finding here that employee's illness in 1948 and 1949 was due to silico-tuberculosis,

the evidence on that phase of the case is not conclusive. The cause of these earlier illnesses presented questions of fact for the commission's determination. If they in fact were caused by silico-tuberculosis and such disease was a continuing one until he finally was compelled to quit work entirely, it must follow that his right to compensation would be fixed as of the date of the first disablement, even though he lacked knowledge of the existence of the disease at that time. To hold otherwise would, in many cases, deny compensation to an employee clearly entitled to it, simply because he did not personally know that he was disabled from a compensable occupational disease. If, for instance, a claim were made here for compensation, including medical expenses, and it could be established that the 1948 and 1949 illnesses were in fact due to silico-tuberculosis, we think that it would be immaterial that employee was ignorant of that fact at the time of the illness.

But even the medical testimony is far from conclusive on this question. The best that can be said is that employee had silicosis as early as 1945 and that tubercle bacilli were found to be present in his system in 1949. The mere presence of silicosis and tubercle bacilli is not enough to establish the cause of his illness unless it is shown that his illness has reached such a stage as to render him unable to work within the meaning of disablement in our statute. Even the last illness, which finally incapacitated employee, was originally diagnosed as pneumonia, and there was some thought that it might be cancer. In a letter written by Dr. O. J. Campbell, employer's physician, to Dr. E. V. Bridge, superintendent of the Mineral Springs Sanatorium, on March 2, 1955, he said:

"I am writing concerning a former employee of Minneapolis-Moline named Leo Kress, who is currently a patient at your hospital. This man has been a long-time silicotic, and my interest at this moment is trying to ascertain whether or not there is concomitant tuberculosis.

"He has been checked over most carefully by Dr. Thomas Lowry, and at the time of my last report from Dr. Lowry, we were unable to make a diagnosis of tuberculosis and were considering strongly the possibility of cancer."

In answer to this letter Dr. Bridge stated that the history of em-

ployee showed that tubercle bacilli were found to be present in 1949 and that as a result of examinations made in 1955 he was of the opinion that employee had active silico-tuberculosis at that time.

Dr. J. E. Jenson, who was employee's personal physician during part of his illness in 1948 and 1949, testified:

"Q. Then would it be your feeling that he first became disabled from silico-tuberculosis on or about October 11, 1954?

"A. That is my feeling, my impression."

Dr. G. C. Roth testified:

"Q. Now, Doctor, assuming that at that same time [in July 1949] he was losing time from work because of a respiratory difficulty, would it be your opinion that the silico-tuberculosis was playing any part in the respiratory condition?

"Mr. Bellis: Well, go ahead.

"The Witness: I believe it is impossible for me to state the cause of his symptoms in 1949. It is certainly possible that the silico-tuberculosis played a part, but not necessarily so."

It would serve no useful purpose to set forth in more detail the testimony of the many medical men who testified. Employer's doctor, after an extensive examination in 1948, rejected employee's right to compensation at that time on the ground that his illness was noncompensable. Viewing the case in retrospect, it probably could be said that the evidence strongly indicates that his 1948 and 1949 illnesses were due to silico-tuberculosis and were then compensable and that the employer was mistaken in rejecting the right to compensation at that time, but the evidence on this phase of the case is not conclusive. Inasmuch as the case presents a fact question as to when disability occurred and there is evidence reasonably sustaining the commission's finding that disability occurred in October 1954, we must affirm. Respondent is allowed $250 attorneys' fees.

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration and decision of this case.