Ervin L. ABRAM, Respondent,

v.

ART GOEBEL FORD and Crum & Forster Insurance Companies, Relators,

Art Goebel Ford and Fidelity & Guaranty Insurance Company, Respondents,

and

MADA Insurance Incorporated, intervenor, Respondent.

No. 82–636.

Supreme Court of Minnesota.

Dec. 17, 1982.

Chadwick, Johnson & Condon, Minneapolis, for relators.

Horvei & Krueger and John J. Horvei, Shoreview, for Abram.

Gilmore, deLambert, Aafedt, Eustis & Forde, Donald W. Anderson and Cynthia K. Nyman, Minneapolis, for Art Goebel Ford and Fidelity & Guaranty Ins. Co.

James Schutjer, St. Paul, for MADA Ins. Inc.

SIMONETT, Justice.

The employer and its insurer last on the risk seek review of a decision of the Workers' Compensation Court of Appeals awarding workers' compensation benefits to the employee. We affirm the findings as to when disablement occurred and that the employee's occupational disease constitutes a work-related injury, but we reverse and remand for an essential finding of fact as to whether the employee's work during the last insurer's coverage was a substantial contributing factor to his disability.

Ervin L. Abram, the employee, claimed a disablement and personal injury by reason of an occupational disease—chronic obstructive lung disease and isocyanate asthma—caused by exposure to chemicals, dust and fumes in his work as a spray painter for relator Art Goebel Ford (Goebel Ford). The Court of Appeals found that Mr. Abram had sustained such an injury; that he had a 30% permanent partial disability of the whole person and temporary partial disability; and that the liability for benefits was not to be apportioned but that relator Crum & Forster Insurance Companies (C & F), last on the risk, was the sole responsible insurer.

While denying the employee's disability was caused by his employment at Goebel Ford, C & F had agreed to pay benefits under a temporary order and petitioned for reimbursement or contribution from respondent Fidelity & Guaranty Insurance Underwriters (F & G), the insurer on the risk prior to C & F.

From 1948 to 1970, Ervin Abram worked as an automobile spray painter for several concerns with no apparent respiratory problems. From 1970 to October 1979, he worked for Goebel Ford. From April 1973 to April 1, 1980, the employer's workers' compensation coverage was with F & G; after April 1, 1980, it was with C & F.

At Goebel Ford the employee worked in an area that exposed him to considerable dust, paint fumes, and paint residue. In 1979 Goebel Ford moved its spray painting operation into a new building with improved ventilation, but Abram says he still inhaled some fumes and noticed that paint and dust seeped under the edges of his mask. Abram quit smoking in 1960 because smoking had caused coughing. In the mid-seventies, Goebel Ford began using acrylic

enamels and paint hardeners containing isocyanate compounds, and Abram says he began to have headaches and feel sick at that time. In 1977 he developed a cough, became sensitive to perfume, soap and deodorant sprays, felt fatigued after walking during hunting trips, and generally did not feel well. He also began to lose weight. By 1978 he complained of shortness of breath at work and by 1979 noticed this also in activities around the home. By March 1980 Abrams was short of breath when he bent over at his work or when working in a sitting position.

In early May 1980, while driving to work, Abram had a sudden episode of difficult breathing. He consulted a doctor on May 27, 1980, and was subsequently referred to Dr. Richard Woellner, a board-certified specialist in internal medicine and pulmonary diseases. Dr. Woellner first saw Abram on June 23, 1980, and diagnosed mild diabetes and chronic obstructive lung disease with sensitivity especially to isocyanate solvents. Prescribed medication improved the employee's symptoms considerably, and he continued to spray paint.

About October 1, 1980, Abram had an episode of breathing difficulty so severe that he then stopped applying paint and took a lower paying job sanding vehicles and applying primer and sealer. He testified that even though the medications have helped, his general vitality has decreased and he becomes so fatigued that he has cut his work week to 4 days and at times leaves work early on those days.

At the hearing the doctors who testified agreed generally on the nature and causes of the employee's lung condition but presented conflicting points of view on the percentage of disability and whether the employee's work activities after April 1, 1980, were a substantial contributing factor to Abram's disability.

The compensation judge found that the employee's exposure to chemicals, dust and fumes at Goebel Ford "over the years" was a substantial contributing factor in his development of chronic obstructive lung disease, including isocyanate asthma; that the

disease was contracted on or about May 27, 1980; that the employee had sustained a 30% permanent partial disability and had suffered reduced earning capacity entitling him to temporary partial disability; and that there was no reasonable basis for apportionment of responsibility for his condition. The judge awarded compensation against C & F, stating in an accompanying memorandum that C & F, as the carrier covering the risk at the time of the last exposure having a causal relationship to disability, was liable for the entire compensation; and that the record did not establish a reasonable basis for apportionment among successive employers or insurers. The compensation judge added that the weight of the evidence indicated that the employee's exposure to sensitizing agents after March 31, 1980—which was after C & F went on the risk—was not a substantial contributing cause of the underlying disease nor a substantial factor in employee's permanent partial disability.

On appeal, the Court of Appeals agreed that the evidence did not permit apportionment of liability and that employee had sustained 30% permanent partial and temporary partial disability. Judge McCarthy in a separate opinion agreed with the compensation judge that the employee had contracted his disease on May 27, 1980; the other members of the Court of Appeals, however, held that this date was not significant, but rather that the employee had sustained disablement and an occupational disease or injury on or about October 1, 1980, when he took a lower paying job.

1. Relators first claim that the evidence does not support a finding that the employee sustained a personal injury within the meaning of the Workers' Compensation Act on either May 27, 1980, as found by the compensation judge, or on October 1, 1980, as found by the Court of Appeals. Relators argue that disablement does not occur until an employee is totally disabled and that the evidence does not support the finding. We disagree.

■ As the majority of the Court of Appeals recognized, the employee's claim is

governed by the law in effect when he suffered disability rather than by former provisions relating to occupational disease. The applicable statute, Minn.Stat. § 176.66, subd. 1 (1980), requires that the employee prove "disablement" from occupational disease:

The disablement of an employee resulting from an occupational disease shall be regarded as a personal injury within the meaning of the workers' compensation law.

Prior to its amendment in 1973, section 176.66, subd. 1, had provided:

The disablement of an employee resulting from an occupational disease, except where specifically otherwise provided, is to be treated as the happening of an accident within the meaning of the workmen's compensation law and the procedure and practice provided applies to all proceedings under this section, except where specifically otherwise provided herein. When used in this section, *"disability" means the state of being disabled from earning full wages at the work at which the employee was last employed and "disablement" means the act of becoming so disabled.*

(Emphasis added.)

In cases arising under the prior statute this court held, following the statutory definition, that disablement occurs when an employee cannot earn full wages at the work at which he was last employed. *Fink v. Cold Spring Granite Co.,* 262 Minn. 393, 401, 115 N.W.2d 22, 28 (1962); *Notch v. Victory Granite Co.,* 306 Minn. 495, 504, 238 N.W.2d 426, 431 (1976). In *Fink,* we rejected the argument, made again by C & F in this case, that disablement occurs only if an employee is totally disabled.

■ Since the meaning of the term "disablement" was well established at the time the statute was amended, we believe that if the legislature had intended to use the term in a different sense in the amended statute, it would have said so. Therefore, to show disablement by October 1, 1980, the employee was required to establish that by then he was not able to earn full wages as a paint sprayer. He presented substantial evidence to that effect. All the medical witnesses agreed that Abram's health was in jeopardy when exposed to the isocyanate solvents to which he is sensitized. There is no dispute that some of the paints and hardeners used by Goebel Ford contained these solvents; and employee testified without contradiction that about 10 months prior to the compensation hearing (*i.e.,* about October 1, 1980) he had experienced such extreme shortness of breath while spray painting that his supervisor then told him not to paint any more. The employee had then switched to the lower paying job of preparing automobiles for painting. The finding that the employee sustained disablement and a personal injury on October 1, 1980, is affirmed.

2. The second claim of relators is that liability was erroneously imposed on C & F, which afforded coverage only from April 1, 1980, because the employee's exposure to any chemicals, dust and fumes after that date did not contribute substantially to the development of his disease and disability.

■ In two recent cases involving claims arising out of occupational disease, we held that the last employer-insurer could be held liable for compensation benefits only if the employee's employment during the period of coverage was a substantial contributing cause of his disability or death from occupational disease. *Halverson v. Larrivy Plumbing & Heating Co.,* 322 N.W.2d 203 (Minn.1982); *Busse v. Quality Insulation Co.,* 322 N.W.2d 206 (Minn.1982). Such a finding is required here before liability can be imposed on C & F. The Court of Appeals made no such finding and, indeed, the compensation judge suggested the contrary in his memorandum.

We reverse, therefore, the determination that C & F is liable for the compensation awarded to the employee. We further remand to consider the evidence on the issue of whether the employee's work activity from April 1, 1980, to October 1, 1980, was, in fact, a substantial contributing cause of his disease and disability.

**92**

Affirmed in part, reversed in part, and remanded for further proceedings.