Norbert **GUGGENBERGER**, Respondent,

v.

**COLD SPRING GRANITE CO.**, Relator.

No. C5–82–533.

Supreme Court of Minnesota.

April 29, 1983.

Koll & McCoy and Laurence F. Koll, St. Paul, for relator.

F. Dean Lawson and John Hagen, Minneapolis, for respondent.

AMDAHL, Chief Justice.

The employer seeks review of a decision of the Workers' Compensation Court of Appeals awarding the employee $16,879 in permanent partial disability benefits for a 20 percent impairment of his lungs due to work-related silicosis, as well as necessary and reasonable medical expenses. Because the employee's last exposure to silica dust and other irritants occurred in 1965, we reverse on the ground that the claim was barred by the statute of repose provisions of Minn.Stat. § 176.66, subd. 3 (1971).

Respondent, Norbert Guggenberger, has worked for relator, Cold Spring Granite Company, since 1936. He sharpened tools for 2 years, and then worked as a granite polisher for 27 years, under constant exposure to silica or granite dust. In 1965, the Industrial Commission ordered that Guggenberger be transferred from his polishing job because X-rays indicated early symptoms of silicosis. He was assigned to the machine shop at no loss of wages and remained there until 1974, when he was transferred to an outdoor supervisory job entailing less physical activity. In July 1978, Guggenberger was hospitalized with an acute heart attack, and on his return to work 3 months later was assigned to indoor work in the machine shop during the winter and outdoor work in summer. At the time of the hearing in this action he was still employed full time and had suffered no loss of wages.

■ The Workers' Compensation Court of Appeals found that Guggenberger sustained a permanent partial disability on November 2, 1979, when he was first informed that he had grade I or II silicosis. However, that court reversed findings of fact that he had been exposed to aggravating conditions from 1965 to 1980 and had suffered continuing personal injuries to his lungs during those years; his last exposure therefore occurred in 1965. It also reversed a finding that temporary partial disability had occurred on or about 1975 or 1976. We defer to the discretion exercised by the Court of Appeals when it makes factual findings "unless consideration of the evidence and the inferences permissible therefrom requires reasonable minds to adopt a contrary conclusion." *Talmadge v. Medtronic, Inc.,* 315 N.W.2d 433, 437 (Minn. 1982) (citations omitted). Here it is clear that there is sufficient evidence in the record to support the Court of Appeals' findings.

■ In 1965 the workers' compensation statutory scheme included the following statute of repose for occupational diseases:

Neither the employee nor his dependents are entitled to compensation for disability or death resulting from occupational disease, unless such disease is due to the nature of his employment as defined in section 176.011, subdivision 15, and was contracted therein within 12 months previous to the date of disablement; except in the case of silicosis or asbestosis, in which cases disablement of the employee must occur within three years from the date of such employee's last exposure with an employer in an employment to the nature of which the disease may have been a hazard * * *.

Minn.Stat. § 176.66, subd. 3 (1971). Subdivision 1 had provided, " 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed and 'disablement' means the act of becoming so disabled." In 1973 subdivisions 2 through 9 were repealed and subdivision 1 rewritten to read in total as follows: "The disablement of an employee resulting from an occupational disease shall be regarded as a personal injury within the meaning of the worker's compensation law." Act of May 24, 1973, ch. 643, §§ 11–12, 1973 Minn.Laws 1584, 1593–94. We recently held that these 1973 amendments did not alter the operative definition

of disablement. *Abram v. Art Goebel Ford,* 327 N.W.2d 88, 91 (Minn.1982). Applying the pre-1973 statutory definition of disablement to an occupational disease claim arising under the post-1973 statute, we found that an employee's disablement occurred on the date the employee took a lower paying job, reasoning as follows:

> Since the meaning of the term "disablement" was well established at the time the statute was amended, we believe that if the legislature had intended to use the term in a different sense in the amended statute, it would have said so. Therefore, to show disablement by October 1, 1980, the employee was required to establish that by then he was not able to earn full wages as a paint sprayer.

*Id.*

■ Because Guggenberger suffered no wage loss within 3 years of 1965,[1] the date of his last exposure (and has suffered none to date), his claim did not mature within the time specified in Minn.Stat. § 176.66, subd. 3 (1971). *See Graber v. Peter Lametti Construction Co.,* 293 Minn. 24, 29, 197 N.W.2d 443, 447 (1972). The later enactment of Minn.Stat. § 176.101, subd. 3 (40) (1982), making permanent impairment of internal organs compensable as a scheduled disability, could not serve to revive the barred claim. *See Klimmek v. Independent School District No. 487,* 299 N.W.2d 501, 502 (Minn.1980) (recognizing that a claim which has been barred by the running of a limitations provision is not revived by subsequent repeal of that provision). The dissent's distinction between the statute of repose, Minn.Stat. § 176.66, subd. 3 (1971), and a statute of limitations is one of form rather than substance; the effect of each is to bar the claim.

Reversed.

SCOTT, Justice (dissenting).

I respectfully dissent. It is undisputed that the employee's silicosis was caused by his employment with relator Cold Spring Granite Company, where he worked for 44 years. Because causation is undisputed, the majority's reliance on Minn.Stat. § 176.66, subd. 3 (1971), to deny benefits is unjustified.

The facts, which the majority finds supported by the evidence, are as follows: The employee, respondent Norbert Guggenberger, worked for relator Cold Spring Granite Company from 1936 through the date of the hearing before the compensation judge in November 1980. He was exposed to silica dust from 1938 to 1965 while working as a stone polisher. He developed silicosis as a result of this exposure. Cold Spring was aware of the employee's silicotic condition by September 1965, and rather than informing him that he had been so stricken, it instead transferred him to another position.[1]

From September 1965 on he had minimal exposure to dust and fumes, but this additional exposure did not cause or aggravate his silicosis. It was not until November 2, 1979, that the employee himself learned he had silicosis and that it was job-related. He filed his petition for benefits on January 10, 1980.

The employee has a 20% permanent partial disability of the entire person, based upon impairment of the lungs and loss of pulmonary function. The injury was caused by and arose out of and in the course of his employment with Cold Spring. He has, admittedly, suffered no actual wage loss as a result of his silicosis. The Workers' Compensation Court of Appeals awarded him permanent partial disability benefits for a scheduled injury under Minn.Stat. § 176.101, subd. 3(40) (1980), which provides

---

1. In its description of *Notch v. Victory Granite Co.,* 306 Minn. 495, 238 N.W.2d 426 (1976), the dissent omits the crucial fact that the employee had lost wages within the 3 year period and was therefore disabled within the meaning of Minn.Stat. § 176.66, subd. 3 (1971).

1. Cold Spring, a self-insured, undoubtably knew of its potential liability in silicosis cases, having been before this court in just such a case three years earlier. *See Fink v. Cold Spring Granite Co.,* 262 Minn. 393, 115 N.W.2d 22 (1962).

for such benefits for injuries to internal organs.

On these facts the employee should receive compensation.

The majority holds that the claim is barred by Minn.Stat. § 176.66, subd. 3 (1971), because he suffered no actual wage loss within three years of the date of his last exposure in 1965. Minn.Stat. § 176.66, subd. 3, repealed in 1973, had provided:

> Neither the employee nor his dependents are entitled to compensation for disability or death resulting from occupational disease, unless such disease is due to the nature of his employment as defined in section 176.011, subdivision 15, and was contracted therein within 12 months previous to the date of disablement; except in the case of silicosis or asbestosis, in which cases disablement of the employee must occur within three years from the date of such employee's last exposure with an employer in an employment to the nature of which the disease may have been a hazard * * *.

Minn.Stat. § 176.66, subd. 1 (1971), amended in 1973, had provided that " 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed and 'disablement' means the act of becoming so disabled." Partial disability from silicosis was not compensable at that time unless it followed a period of total disability. Minn. Stat. § 176.664 (1971).

The majority errs in requiring the employee to establish actual wage loss within three years of this last exposure. By requiring the employee's claim to have "mature[d]" within the three-year period, the majority construes the statute contrary to legislative intent and our past decisions.

We have held that under § 176.66, subd. 3, an employee need not have suffered a *compensable* disability within three years of his last exposure; he need only have suffered a disablement. In *Notch v. Victory Granite Co.,* 306 Minn. 495, 238 N.W.2d 426 (1976), an analogous argument was con-

sidered and rejected. There, a silicotic employee terminated his employment with Victory Granite in 1957 and took a lower-paying job not involving exposure to silica dust. He did not become totally disabled until 1973. The employer and insurer attempted to disclaim responsibility by arguing that no compensation was due under § 176.66, subd. 3, because the employee had not sustained a compensable disability within three years of his last exposure. This court expressly held that § 176.66, subd. 3, did not bar the claim even though there had been no compensable disability within three years of the last exposure. 306 Minn. at 502–03, 238 N.W.2d at 430–31.

The employee in this case suffered disability within three years of his last exposure. He was unable in 1965 to safely continue his work as a granite polisher. The disability was not compensable, however, because Cold Spring, which did not inform him of the disease, continued to pay him regular wages at a new job assignment. This was a disablement within the meaning of § 176.66, subd. 3, even though it was non-compensable by reason of the reassignment and continued payment of full wages. This interpretation is eminently reasonable in light of the purpose of the statute, which was explained in *Notch v. Victory Granite Co.,* 306 Minn. at 502–03, 238 N.W.2d at 430–31, as follows:

> As respondent correctly points out, the 'last exposure limitation' is an insurance provision intended to assure a causal relationship between the disease and the employment. It is not a limitation in the nature of those barring stale claims.
>
> " * * * Quite likely the legislature was persuaded * * * that if silicosis does not manifest itself within three years of an employee's last exposure to silica dust, proof both medically and otherwise that an employment hazard caused the disease is so speculative and uncertain as to be unreliable." *Graber v. Peter Lametti Construction Co.,* 293 Minn. 24, 30, 197 N.W.2d 443, 447 (1972).

The purpose of the statute, to insure that a causal link exists between the employment and the disease, has been fulfilled in this case. The disease manifested itself within three years of the last exposure, and the majority does not dispute that the employment caused it. As the avowed purpose of the statute has been met, it is unreasonable to raise it as a bar to the employee's claim.

Alternately, I would hold that § 176.66, subd. 3 (1971), repealed in 1973, is simply inapplicable to this case. It is settled that in occupational disease cases, "the rights of the employee become fixed by the law in effect as of the date he sustains a *compensable* injury or disability." (Emphasis added.) *Notch v. Victory Granite Co.,* 306 Minn. 495, 496 n. 1, 238 N.W.2d 426, 428 n. 1 (1976); *Fink v. Cold Spring Granite Co.,* 262 Minn. 393, 400–01, 115 N.W.2d 22, 28 (1962); *Kress v. Minneapolis-Moline Co.,* 258 Minn. 1, 3, 102 N.W.2d 497, 499 (1960). The injury sustained by the employee was not compensable while § 176.66, subd. 3, was in effect. Thus, his rights are not governed by its requirements. In a similar situation we said: "The legislature could not have intended that an employee's rights to compensation be barred before his silicosis had progressed to the point where he might bring proceedings to enforce such rights * * *." *Fink v. Cold Spring Granite Co.,* 262 Minn. 393, 405, 115 N.W.2d 22, 30 (1962).

Neither can I agree with the implication in the majority opinion, based upon *Abram v. Art Goebel Ford,* 327 N.W.2d 88 (Minn. 1982), that recovery under § 176.101, subd. 3(40), for a scheduled injury to an internal organ caused by occupational disease requires the employee to show he suffered disablement in the form of actual wage loss. *Abram* involved claims for both *temporary* partial disability and permanent partial disability. The discussion there relating to the requirement of wage loss, although not specifically stated, could only have related to the temporary partial disability claim.

To recover compensation for temporary partial disability under § 176.101, subd. 2 (1980), an employee must show some actual wage loss, as those benefits are designed to compensate for wage loss. However, the recovery of permanent partial disability benefits for scheduled injuries, such as were awarded in this case under § 176.101, subd. 3(40), does not require any showing of wage loss.

Permanent partial disability compensation for scheduled injuries of the sort here involved is meant as compensation for the "functional loss of use or impairment of function" of a scheduled member or organ, rather than as compensation for wage loss. Minn.Stat. § 176.021, subd. 3 (1980). In *Ahoe v. Quality Park Products,* 258 N.W.2d 885, 889–90 n. 2 (Minn.1977), the court noted that recovery for scheduled injuries is not designed to compensate for wage loss:

> With respect to compensation claims based on injuries sustained after the effective date of the amendment (August 1, 1974), it appears that the compensation payable for permanent partial disability represents general damages rather than payment for loss in earning capacity.

Similarly, in *Tracy v. Streater/Litton Industries,* 283 N.W.2d 909, 913–914 (Minn. 1979), we said:

> Logic and consistency require us to adhere at the outset to our earlier view expressed in *Ahoe v. Quality Park Products,* 258 N.W.2d 885, 889, n. 2 (Minn. 1977), that permanent partial disability benefits must compensate for loss distinguishable from reduced earning capacity because total disability benefits already reflect the maximum in unemployability. *Accordingly, we hold that the legislature has made impairment of function compensable for its own sake in the form of damages separate and distinct from wage loss.*

(Emphasis added; footnote omitted.)

Finally, *Klimmek v. Independent School District No. 487,* 299 N.W.2d 501 (Minn.

1980), is inapplicable. There, we stated that a claim which has been barred by the running of a limitations provision is not revived by the subsequent repeal of that provision. Minn.Stat. § 176.66, subd. 3 (1971), is not a statute of limitations provision. We have already said its purpose is to insure a causal link between the employment and the injury. "It is not a limitation in the nature of those barring stale claims." *Notch v. Victory Granite Co.,* 306 Minn. 495, 502, 238 N.W.2d 426, 430 (1976).

I would affirm.

TODD, Justice.

I join in the dissent of Justice Scott.

YETKA, Justice.

I join the dissent of Justice Scott.

WAHL, Justice.

I join the dissent of Justice Scott.