Elmer J. WORDEN, Respondent,

v.

COUNTY OF HOUSTON, et al., Relators.

No. C0–83–1969.

Supreme Court of Minnesota.

Nov. 2, 1984.

Rehearing Denied Dec. 7, 1984.

aggravated DWI prosecution).

Scott B. Lundquist, Minneapolis, for relators.

David A. Stofferahn, Minneapolis, for respondent.

WAHL, Justice.

Certiorari to review a decision of the Workers' Compensation Court of Appeals which, with two judges dissenting, applied the presumption set forth in Minn.Stat. § 176.011, subd. 15 (1982), to find that the coronary arteriosclerosis which caused employee's myocardial infarction was an occupational disease. We are satisfied that the statutory presumption was applicable in this case, but we reverse the award of benefits because we find that the employer overcame the presumption with uncontradicted medical evidence that the disease and disability were the result of recognized causative factors unrelated to the employee's occupation.

The employee, Elmer Worden, sustained a heart attack while at home in bed in the early morning hours of September 17, 1979. At that time, he had been employed as a deputy sheriff for 14 years, first by Fillmore County for 5 years, then by Houston County, his present employer. Since January of 1979, he had worked as chief deputy sheriff, a position which entailed

more responsibility, more on-the-job pressure, and longer work hours than he had experienced previously.

Worden subsequently returned to work but sought workers' compensation benefits, relying on the presumption of Minn.Stat. § 176.011, subd. 15 (1982), to claim that his heart attack and arteriosclerosis resulted from the nature of his employment. Houston County opposed application of the presumption, arguing that Worden had not undergone the preemployment physical examination that is required by the statute. Houston County further contended that even if the presumption did apply, it had been refuted by medical evidence that Worden's coronary condition in fact resulted from causative factors unrelated to his employment. The compensation judge found that the presumption did apply and that the employer had failed to make the strong showing necessary to rebut the presumption. The Workers' Compensation Court of Appeals affirmed that decision. Houston County petitioned this court for certiorari.

■■■ 1. Minn.Stat. § 176.011, subd. 15 (1982), provides:

> If immediately preceding the date of his disablement or death, an employee was employed on active duty * * * as a * * * sheriff or full time deputy sheriff of any county, and his disease is that of myocarditis, coronary sclerosis, pneumonia or its sequel, and at the time of his employment such employee was given a thorough physical examination by a licensed doctor of medicine, and a written report thereof has been made and filed with such * * * sheriff's department of any county, which examination and report negatived any evidence of myocarditis, coronary sclerosis, pneumonia or its sequel, the disease is presumptively an occupational disease and shall be presumed to have been due to the nature of his employment.

In this case Houston County did not require and Worden did not undergo a physi-

cal examination at the time of his employment. Therefore, Houston County argues, this condition precedent to application of the statutory presumption was not established. We do not agree. The purpose of the statute's physical examination and record requirement, as we noted in *Linnell v. City of St. Louis Park*, 305 N.W.2d 599 (Minn.1981), is "to establish that an employee is free of the diseases specified in the statute at the onset of his employment." *Id.* at 601. Where the evidence and the reasonable inferences therefrom satisfy this purpose, strict compliance with the requirement is not necessary. Although there was no preemployment examination in this case, Worden was required to undergo a physical examination in 1965 before attending a Bureau of Criminal Apprehension training school for new officers in connection with his employment as a deputy sheriff in Fillmore County. Here, as in *Linnell*, there is no written record of the results of that examination, but Worden testified that Dr. Jesse Nehring performed the examination and signed the application. Further, the fact that Worden was permitted to participate in the training class raises the reasonable inference that he had "a clean bill of health" at that time. Moreover, because Worden has worked continually as a deputy sheriff since the time of that examination, we believe the evidence and inferences therefrom can be said to substantially satisfy the statutory purpose behind requiring a preemployment examination.

■■■ 2. Having found the presumption applicable, we must determine whether the employer successfully overcame it. To rebut the presumption, the employer must make a strong showing either that the employee's duties were significantly less stressful than those of most employees in his occupation or that his disease and disability resulted from recognized causative factors unrelated to his occupation. *Linnell*, 305 N.W.2d at 601. There is no indication that Worden's duties were less stressful than those of his coworkers. Indeed, Worden testified at the compensation

hearing that, for 6 to 8 months prior to his myocardial infarction, he worked longer hours, shouldered more responsibility, and had more on-the-job stress as chief deputy than he had experienced prior to that promotion. On the causation issue, however, the medical evidence directly contradicts the statutory presumption. The parties offered into evidence, not medical expert testimony, but only the medical reports of the two examining physicians. Both reports attribute Worden's myocardial infarction and coronary arteriosclerosis to his heavy cigarette smoking, his positive family history of coronary artery disease, and his hypertension which was documented before Worden ever began law enforcement work. Each of these is a recognized causative factor unrelated to Worden's employment. Additionally, both reports state unequivocally that there is no evidence that Worden's work caused or contributed to his myocardial infarction or to the underlying arteriosclerotic disease.

When faced with a record containing such specific and uncontroverted medical evidence, we are compelled to reverse the findings to the contrary. Had there been expert testimony on this issue, the opinions expressed in the reports could have been explicated, tested, and perhaps qualified. And, had there been such testimony, we would afford deference to the factfinder's unique opportunity to scrutinize the witnesses and judge their credibility. *Fryhling v. Acrometal Products, Inc.*, 269 N.W.2d 744, 747 (Minn.1978); *Golob v. Buckingham Hotel*, 244 Minn. 301, 304, 69 N.W.2d 636, 639 (1955). But where only documentary evidence is before us on an issue and that evidence is entirely contrary to a factual finding, we must vacate that finding as lacking foundation in the record. Accordingly, we reverse the award of benefits in this case on the ground that the medical evidence overcame the presumption of occupational disease.

Reversed.

KELLEY, J., took no part in consideration or decision of this case.