**Norbert J. MOES, Relator,**

v.

**CITY OF ST. PAUL,**
**Self-Insured, Respondent,**

**and**

**Blue Cross & Blue Shield of**
**Minnesota, intervenor,**
**Relator.**

**No. CO–86–1582.**

Supreme Court of Minnesota.

March 20, 1987.

---

David R. Vail, Roseville, for Norbert J. Moes.

Indru S. Advani, St. Paul, for Blue Cross, Blue Shield.

Edward P. Star, Thomas J. Weyandt, St. Paul, for respondent.

## OPINION

AMDAHL, Chief Justice.

Relator Norbert J. Moes filed a claim petition for workers' compensation benefits after discovering that he had contracted coronary arteriosclerosis. The compensation judge found that employee had suffered an occupational disease and disability entitling him to benefits. The Workers' Compensation Court of Appeals (WCCA) affirmed the determination that employee suffered an occupational disease, but reversed the award of benefits, holding that employee suffered no disability because he suffered no loss of wages. We have granted writ of certiorari to review the decision, and affirm the finding that employee suffered an occupational disease. We reverse the decision that employee is not entitled to

benefits, and reinstate the decision of the compensation judge.

Employee Moes worked as a firefighter for respondent City of St. Paul from June 1957 to October 1984. He passed a physical examination when he was first hired, and the city concedes there is no evidence he had a preexisting heart condition prior to employment with the city. Employee was assigned to general firefighting duties from 1957 to 1976. During this time he worked 24-hour shifts on duty, followed by 24 hours off. At the compensation hearing, employee described the physically demanding job of firefighting, during which he was exposed to dangerous situations and often inhaled noxious smoke from the fires. Employee also described the stressful situations of "living under the bell"; firefighters had to always be on guard because they could be called at any time. In November 1976, employee was transferred to the duty of driving the district fire chief to fires within the area. The job also required employee to occasionally fight fires.

In late 1979 or early 1980, employee had a routine physical as part of a firefighter's mandatory fitness program. The testing revealed some abnormal cardiac readings, and further testing indicated that Mr. Moes had coronary arteriosclerosis. The physician in charge of testing employee recommended that he be put on limited duty. Employee was unable to return to his previous duty as driver for the district fire chief since employee could no longer fight fires. He was transferred to the dispatcher's office on September 15, 1980, but because of a hearing difficulty, employee found the duties very difficult. He was therefore reassigned to work as a fire inspector.

Employee testified that he also did not like the fire inspector's job, describing it as a negative, harrowing job where he faced hostility because he was ordering people to spend funds to comply with regulations. Employee stayed at the job for four years until he took early retirement in October 1984. The record shows that civil servants hired as fire inspectors were paid much less than employee. Employee suffered no loss or reduction in wages, however, because the City of St. Paul has a policy of attempting to place employees at full pay in jobs which are within their physical capabilities if an employee has suffered a disability.

Employee filed a claim petition on May 6, 1983 for compensation benefits. Employer denied the claim, and a hearing was held before a compensation judge. At the hearing, employee testified about his employment history as summarized above. Mr. Moes also gave some information about his medical history; he indicated that his father had died from a heart attack at age 75, and his mother died from intestinal problems when she was 84. None of employee's siblings had ever had heart problems, and employee never had coronary problems prior to 1979. Employee had smoked two or more packs of cigarettes a day for 35 years before quitting in January 1980.

At the close of the hearing, the compensation judge granted both parties' motions to have their medical experts submit written reports on whether employee's heart condition was causally related to his employment. The employee's expert, Dr. Markel Karlen, thought employee's disability was due to his employment as a firefighter. Employer's expert, Dr. Ronald Vessey, felt that employee's heart condition was due to his cigarette smoking, hypertension, family history of coronary disease, and an abnormal lipid profile. Employer also submitted a reply brief in response to employee's brief to the compensation judge, and filed a curriculum vitae of its expert, Dr. Vessey.

Ten days later, employee sent the curriculum vitae of his expert and also submitted an additional report by Dr. Karlen relating to the issue of causation between employee's work and his heart condition. Employer objected to the additional report. The compensation judge offered employer the opportunity to cross-examine the expert, but employer declined.

Apparently the compensation judge later misplaced employee's brief and by ex parte communication, requested an additional copy of his brief. The employee's attorney replied by sending a copy of the brief, as well as an additional letter intended as a "short supplemental brief" on the issues of causation and disablement. The city objected to the additional brief. The compensation judge responded by allowing employer to file a supplemental brief on the same issues.

Based on the testimony of witnesses and submitted records, the compensation judge determined that employee had sustained 20% permanent partial disability to the body from his heart condition. The judge also found employee's coronary arteriosclerosis causally related to his firefighting duties; he held that the statutory presumption of causation between employee's duties and his disease as defined by Minn. Stat. § 176.011, subd. 15, had not been overcome. The compensation judge held that employee suffered a disability despite no loss of wages, stating; "There appears to be no good reason for requiring a reduction in wage as the basis for claiming permanent partial disability resulting from employee's proven employment condition when employee's condition is otherwise compensable." Accordingly, the compensation judge ordered recovery for employee of $24,400 plus reasonable medical expenses and interest.[1]

The WCCA affirmed the finding that employee had suffered an occupational disease, but reversed the finding that he suffered a disability, because he suffered no wage loss. Reviewing that decision, we must address the following issues:

1. Whether the compensation judge committed prejudicial error by considering improperly admitted evidence.

2. Whether employee is entitled to the presumption set forth in Minn.Stat. § 176.011, subd. 15.

3. Whether employee suffered a "disability."

 Prior to addressing the issues, we must determine the applicable law. It is well settled that the law in effect at the time of employee's disablement governs the claims. *Polaschek v. Asbestos Prods., Inc.*, 361 N.W.2d 37 (Minn.1985). Although it is disputed whether employee suffered a disability, employee asserts he was disabled in 1980 when he could not return to his previous work as an active firefighter and driver for the fire chief. Our analysis will therefore apply the law as of 1980.

1. Employer argues the compensation judge found that employee had suffered an occupational disease because the compensation judge considered improperly admitted evidence; namely, the additional report by employee's expert and the additional brief submitted by employee's attorney after the completion of the hearing.

Minn.Stat. § 176.411, subd. 1 (1980), provides a worker's compensation court or judge with broad discretion over the conduct of a hearing:

Except as otherwise provided by this chapter, when a compensation judge makes an investigation or conducts a hearing, the compensation judge is bound neither by the common law or statutory rules of evidence nor by technical or formal rules of pleading or procedure. The investigation or hearing shall be conducted in a manner to ascertain the substantial rights of the parties.

 Minn.Rules 1415.2900, subpart 9(B) outlines a procedure for conducting a hearing, "[u]nless the compensation judge determines that the substantial rights of the parties will be ascertained better in some other manner." The compensation judge did not follow the procedures suggested in the rules, but in light of the broad discretion given to compensation judges, we do not find his admission of employee's additional testimony to be in error. Any impro-

---

1. The compensation judge also awarded relator Blue Cross & Blue Shield of Minnesota (Blue Cross) recovery of $2,191.94 from employer which Blue Cross had previously paid on the employee's behalf for his treatment.

priety in the procedures was not prejudicial to respondent, since the compensation judge granted respondent ample opportunity to depose employee's expert on the causation issue and because employer was granted permission to file an additional response brief. We therefore hold that the additional evidence was properly admitted and that the compensation judge did not commit reversible error.[2]

2. Respondent presents two challenges to the finding that employee's heart condition is presumptively an occupational disease as set forth in Minn.Stat. § 176.011, subd. 15 (1980). That statute provides:

> If immediately preceding the date of his disablement or death, an employee was employed on active duty with an organized fire or police department of any municipality, as a member of the Minnesota highway patrol, conservation officer service, state crime bureau, as a forest officer by the department of natural resources, or sheriff or full time deputy sheriff of any county, and his disease is that of myocarditis, coronary sclerosis, pneumonia or its sequel, and at the time of his employment such employee was given a thorough physical examination by a licensed doctor of medicine, and a written report thereof has been made and filed with such organized fire or police department, with the Minnesota highway patrol, conservation officer service, state crime bureau, department of natural resources, or sheriff's department of any county, which examination and report negatived any evidence of myocarditis, coronary sclerosis, pneumonia or its sequel, the disease is presumptively an occupational disease and shall be presumed to have been due to the nature of his employment.

Respondent challenges the validity of the statute on equal protection grounds, arguing that the statutory presumption favoring police and firefighters but not other employees is an improper classification. Alternatively, respondent argues that it has overcome the presumption of causation between employee Moes' work as a firefighter and his heart condition.

■ Respondent's constitutional challenge is unpersuasive. The distinction between police and firefighters and other occupations does not involve a suspect class, and the legislative classification is therefore valid if the validity of the distinction is at least debatable. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469, 101 S.Ct. 715, 726, 66 L.Ed.2d 659 (1981); *United States v. Carolene Products Co.*, 304 U.S. 144, 153–54, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938). In *Linnell v. City of St. Louis Park*, 305 N.W.2d 599 (Minn.1981), we examined the policy underlying the statutory presumption of section 176.011, subd. 15:

> We construe section 176.011(15) [sic], however, to embody the legislature's presumably informed acceptance of the thesis that the occupations of firemen, policemen, and the other occupations specified in that provision are likely to involve greater stress, whether physical or emotional, or both, than other occupations and its acceptance also of the thesis, widely but not uniformly held, that such stress is causative of or contributory to the development of the specified heart and lung diseases. Other courts have differed in their views of the strength of similar statutory presumptions. *See* 1B Larson, Workmen's Compensation Law, § 41.72(a) (1980). It would seem that the presumption, if it is to have its intended effect, should not be rebuttable by medical opinion denying generally the correctness of either thesis accepted by the legislature.

*Id.* at 601. Employer has placed in the record recent studies questioning whether firefighting causes greater stress than oth-

**2.** Although not grounds for reversal in the present case, we wish to caution against ex parte communications between a judge and one of the parties. In this case, the compensation judge contacted appellant merely to obtain another copy of employee's brief. The compensation judge should have also notified respondent of the communication in order to avoid any appearance of prejudice.

er occupations. As we have previously stated, however, "it is not this court's function, at least in the absence of overwhelming evidence to the contrary, to second-guess the scientific accuracy of a legislative determination of fact. Nor is it within our province to determine the wisdom of or necessity for a legislative enactment." *Minnesota State Board of Health v. City of Brainerd*, 308 Minn. 24, 32, 241 N.W.2d 624, 629 (1976) (rejecting challenge to Minn. Stat. § 144.145 requiring flouridation of public water supplies). The medical studies submitted by respondent do not provide the type of overwhelming evidence necessary to sustain a constitutional challenge. If respondent wishes to challenge the presumption of section 176.011, subd. 15, then it should present those arguments to the legislature for debate and deliberation. We hold section 176.011, subd. 15, is a valid legislative enactment.

Employer asserts that if the statute is valid, respondent has overcome the presumption of causation. In *Linnell*, we held that to defeat the presumption, "an employer is required to make a strong showing either that the particular claimant's duties were significantly less stressful than those of most employees in his occupation or that his disease and disability were the result of recognized causative factors which are not related to his occupation." *Linnell*, 305 N.W.2d at 601. Respondent admits that relator's work was not less stressful than that of other firemen; instead, the city argues that employee's disease was caused by various nonoccupational factors.

In *Worden v. County of Houston*, 356 N.W.2d 693 (Minn.1984), we found the statutory presumption overcome where medical reports unanimously attributed employee Worden's heart condition to his heavy smoking, a positive family history of coronary heart disease, and hypertension which Worden had prior to his work as a law officer.[3] *Id.* at 696. *Worden* is distin-

guishable from the present case, however. In *Worden*, both experts agreed that the cause of Worden's heart condition was not work related. In contrast, the expert medical reports on employee Moes disagree as to the cause of his condition; Dr. Karlen concluded the disease was occupationally related, while Dr. Vessey determined the disease was due to employee's background factors. Unlike the employee in *Worden*, relator does not have a history of hypertension prior to working as a firefighter, and with the exception of his father's heart attack, employee's family shows no history of heart problems. The WCCA found employee's coronary arteriosclerosis to be work-related, and we will not disturb that court's findings when those findings are not manifestly contrary to the evidence. *Egeland v. City of Minneapolis*, 344 N.W.2d 597, 601 (Minn.1984). We hold that respondent has failed to overcome the presumption that employee's heart condition is occupationally related, and we affirm the WCCA finding that employee suffers from an occupational disease.

3. The WCCA denied the award of permanent partial disability benefits despite concluding that employee had an occupational disease; the court reasoned that because employee suffered no wage loss, he suffered no disability. In order to analyze this issue, it is necessary to examine the legislative policy underlying permanent partial disability benefits and the development of the law determining when an employee is "disabled" and thus eligible for workers' compensation benefits.

Prior to 1974, Minn.Stat. § 176.021, subd. 3 provided in relevant part:

[P]ayments shall be made as nearly as may be at the intervals when the wage was payable; provided, however, that payments for permanent partial disability shall be made by lump sum payment * * * without the necessity of any agreement, or order of the commission, upon

---

3. At oral argument, respondent asserted that Minn.Stat. § 176.011, subd. 15, is invalid as applied because the presumption is impossible to overcome. Our holding in *Worden* clearly indi-

cates that the statutory presumption is rebuttable where an employer meets the criteria outlined in *Linnell*.

cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained, unless, upon good cause shown, it is otherwise ordered by the commission.

Interpreting the pre–1974 statute, we held that permanent total and permanent partial disability benefits were intended to compensate for lost earnings, either actual or presumed. *Boquist v. Dayton Hudson Corp.* 297 Minn. 14, 18, 209 N.W.2d 783, 785 (1973). We thus found that an employee could not *simultaneously* recover permanent partial and temporary total benefits, absent good cause shown, since temporary benefits were also for loss of wages. *Pramschiefer v. Windom Hospital,* 297 Minn. 212, 215, 211 N.W.2d 365, 368 (1973).

Following our denial of dual benefits in *Pramschiefer* the legislature amended section 176.021, subd. 3, by, among other things, adding the following language to the statute:

> Compensation for permanent partial disability is payable concurrently and in addition to compensation for temporary total disability and temporary partial disability as set forth in Minnesota Statutes, Section 176.101, subdivisions 1 and 2, and for permanent total disability as defined in Minnesota Statutes, Section 176.101, subdivision 5; and such compensation for permanent partial disability shall not be deferred pending completion of payment for temporary disablity or permanent total disability, and no credit shall be taken for payment of permanent partial disability against liability for permanent total disability. Liability on the part of an employer or his insurer for disability of a temporary total, temporary partial, and permanent total nature shall be considered as a continuing product and part of the employee's inability to earn or reduction in earning capacity due to injury or occupational disease and shall be payable accordingly. Permanent partial disability is payable for functional loss of use or impairment of function, permanent in nature, and payment therefore shall be separate, distinct, and in addition to payment for any other compensation.

Act of April 12, 1974, ch. 486, § 1, 1974 Minn.Laws 1230, 1231.

Following the legislative amendment to section 176.021, subd. 3, we found that the amended statute provided for the possible recovery of permanent partial disability benefits in addition to and distinct from recovery of temporary disability benefits. *Ahoe v. Quality Park Products,* 258 N.W.2d 885 (Minn.1977). We later expanded our analysis of permanent partial disability benefits in *Tracy v. Streater/Litton Indus.,* 283 N.W.2d 909 (Minn.1979), a consolidation of three cases in which the central issues were whether Minn.Stat. § 176.021, subd. 3, allowed for concurrent recovery of permanent partial disability and temporary disability benefits and, if so, whether the statute was constitutional. Following *Ahoe,* this court determined that through the amendment, "the legislature has made impairment of function compensable for its own sake in the form of damages *separate and distinct from wage loss." Id.* at 914. (emphasis added). Our decisions interpreting section 176.021, subd. 3, clearly indicate that permanent partial disability benefits are intended to compensate permanent loss or impairment of a bodily function, and is in no way dependent on any prerequisite showing of wage loss. In light of our determination, we must next examine when an employee is "disabled" and thus eligible for permanent partial benefits.

Prior to its amendment in 1973, Minn. Stat. § 176.66, subd. 1, defined "disability" as "the state of being disabled from earning full wages at the work at which the employee was last employed and 'disablement' means the act of becoming so disabled." We held that this definition of "disability" survived amendment of the statute in *Abram v. Art Goebel Ford,* 327 N.W.2d 88 (Minn.1982). In *Abram,* we stated that to show disability, the employee Abram had to establish he was unable to earn full wages in his previous job as a paint sprayer. The record showed employee could not return to his paint spraying job; he was transferred to a different, low-

er paying job. We found that employee might be eligible for permanent partial disability and temporary partial disability benefits, but we remanded for a determination of whether employee Abram's work activity caused his disease and disability.

The court next addressed the issue of when disability occurs in *Guggenberger v. Cold Spring Granite Co.*, 332 N.W.2d 655 (Minn.1983). Employee Guggenberger was constantly exposed to silica and granite dust while working as a granite polisher for 27 years. In 1965, the Industrial Commission ordered his employer, Cold Spring Granite Company, to transfer him to another job because x-rays indicated he had early symptoms of silicosis. He was transferred to the machine shop area and then to a supervisory job at no loss of wages. In 1979, 14 years after his last exposure to silica dust, Guggenberger was diagnosed as having silicosis. He filed for benefits in 1980, 15 years after his last exposure to silica dust. The Workers' Compensation Court of Appeals determined that employee had not been exposed to aggravating conditions between 1965 and 1980 and found he had not suffered any temporary disability in 1975. With four judges dissenting, we found that because Guggenberger suffered no wage loss within three years of his last exposure to silica dust, his claim was barred by the statute of repose, Minn.Stat. § 176.66, subd. 3 (1971), *repealed by* Act of May 24, 1973, ch. 643, § 12, 1973 Minn. Laws 1585, 1594. We also held that the internal organs statute, Minn.Stat. § 176.-101, subd. 3(40) (1980) (repealed 1983), enacted after Guggenberger was diagnosed as having silicosis, could not revive the barred claim.

Most recently, in *Green v. Boise Cascade Corp.*, 377 N.W.2d 924 (Minn.1985), we unanimously reversed an award of permanent partial disability benefits because employee returned to his regular work at full wages. We suggested, however, that a disability might exist where an "employee follows [the physician's] advice and takes another job at reduced wages—or when he or she requests a job change." *Id.* at 926

 Our examination of prior cases defining disability shows that *Abram* set forth a definition that an employee is disabled if he (1) cannot earn full wages (2) at the work in which he is last employed. In *Guggenberger*, we focused on wage loss indicating disability, but in *Green*, we again recognized that an employee might be disabled if the employee is required to change jobs due to an occupational disease. A careful consideration of legislative intent, statutory language and policy considerations leads to the conclusion that an employee is "disabled" for purposes of recovering permanent partial disability if he cannot return to his prior employment at full wages. Thus, even if an employee is able to return to work in a different capacity at full wages, if the employee is able to establish the transfer was due to an occupational disease resulting in functional loss of use, the employee is entitled to recovery. We think the decision is consistent with the language of Minn.Stat. § 176.66, subd. 1, which we interpreted in *Abram*, and is consistent with the legislative intent of providing permanent partial disability benefits as set forth in Minn.Stat. § 176.021, subd. 3. To the extent this decision is inconsistent with *Guggenberger*, we overrule our decision in that case.[4]

A contrary holding making permanent partial disability benefits for occupational disease dependent solely on wage loss would contravene the language of § 176.-021, subd. 3. We fail to see why permanent partial disability benefits for occupational disease should be dependent on wage loss, while permanent partial disability benefits for scheduled disabilities is available regardless of whether employee has lost

---

4. Guggenberger's exposure to silica dust occurred during the period when Minn.Stat. § 176.66, subd. 3 (1971), a 3-year statute of repose since repealed, was in effect and prior to the effective date of Minn.Stat. § 176.101, subd.

3(40) (1980) (Act of June 4, 1975, ch. 359, § 8, 1975 Minn.Laws 1168, 1176) (repealed 1983) which made permanent impairment of internal organs compensable as a scheduled disability.

earnings.[5] Employer asserted at oral argument that more restrictive recovery for occupational disease is appropriate because the issue of causation is less clear. We think that the causation question is determined by the compensation judge when determining if the injury is an occupational disease as opposed to an injury unrelated to an employee's vocation.

Applying our holding to the present case, we think the employee Moes is entitled to permanent partial disability benefits as awarded by the compensation judge. Both experts testified that due to employee's arteriosclerosis, he has suffered a 20% disability. The compensation judge and the WCCA determined that the condition was caused by the stress of employee's work as an active firefighter. As a result of the disease, employee was unable to return to his previous work.[6] Under these circumstances, we think employee is entitled to recover benefits for permanent partial disability.[7]

The decision of the Workers' Compensation Court of Appeals is affirmed in part and reversed in part; the decision of the Compensation Judge is reinstated.

---

5. We note that the legislature, through the commissioner of labor and industry, recently adopted a schedule of disability for organic heart disease in Minn. Rules 5223.0190 (Supp. 1986). See 10 State Register 1124 (November 11, 1985).

6. Employer argues that Moes retained his title as a fireman and therefore returned to his previous job. That assertion ignores the fact that employee's job functions had drastically changed to sedentary activities. It also ignores the dispositive issue of whether employee has suffered impairment of function, the factor for which permanent partial disability is intended to compensate. Were we to accept employer's argument, we would be placing form over substance. Employer acknowledged that it attempts to place an injured worker in some capacity within the employee's limits while allowing the employee to keep his job title. Employer's efforts to place the employee in a job within his limits are laudable and avoid liability for temporary disability, but do not preclude an employee from recovering for permanent injury from an occupational disease.

7. Employee also requested temporary partial and temporary total benefits. Employee suffered no loss of wages as a result of his condition, however, and is therefore not entitled to recovery for temporary disability benefits, since temporary benefits are based on loss of earnings. See Minn.Stat. § 176.021, subd. 3 (1980).